UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Civil No.  1:08-cv-00325-rjl |
| FRANCES HAYLOCK | ) | Case No.  07-00235 |
| | ) | (Chapter 13) |
| | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |

## SUPPLEMENTATION TO DESIGNATION:  TRANSCRIPT OF HEARINGS JUNE 20, 2007 AND JANUARY 15, 2008

THE BURNS LAW FIRM, LLC, by and through John D. Burns, Esquire (the

"Appellant"), hereby files this Supplementation to Designation:  Transcript of Hearings June 20,

2007 and January 15, 2008 (the "Motion"), and in support thereof, attaches by way of

supplementation to the Designation filed the transcripts referenced above.

Respectfully submitted,

--------/S/ John D. Burns---------

_____
John D. Burns, Esquire (#22777)
The Burns LawFirm, LLC
6303 Ivy Lane, Suite 102
Greenbelt, Maryland 20770
(301) 441-8780

Counsel for the Appellant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT ON THE 8th day of April, 2008, a copy of the foregoing Supplement to Designation was served by first class mail, or by ECF upon registered recipients, upon the following parties in interest:

Jeffrey M. Sherman, Esquire
Semmes, Bowen & Semmes
1001 Connecticut Avenue, NW
Suite 1100
Washington DC 20036

Clifford J. White, III
Program Director
Executive Office for U.S. Trustees
20 Massachusetts Avenue, NW
Suite 8000D
Washington DC  20530

-----------/S/ John D. Burns-----------
_____
John D. Burns

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF COLUMBIA

```
- - - - - - - - - - - - - -x
In Re:                     :
                           :
FRANCES EDGAR HAYLOCK      :
                           :
         Debtor            : Case No. 07-00235
                           :
         (Chapter 13)      :
                           : Washington, D.C.
- - - - - - - - - - - - - -x June 20, 2007
```

TRANSCRIPT OF HEARING ON MOTIONS
FOR ACCOUNTING AND SANCTIONS
BEFORE THE HONORABLE S. MARTIN TEEL, JR.
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

On behalf of the George Basiliko Trust:

JEFFERY SHERMAN, ESQ.

On behalf of the Debtor:

JOHN BURNS, ESQ.

Proceedings recorded by the Court, transcript produced
By Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C. 20005, 202-347-5395, www.pro-typists.com
B2325B/bf

**P R O C E E D I N G S**

1

2          THE CLERK:  All rise.  All persons having

3    business before the Honorable S. Martin Teel, Jr., of

4    the United States Bankruptcy Court for the District of

5    Columbia, draw nigh and give your attention.  This

6    Honorable Court is now in session.  Please be seated and

7    come to order.

8          The first case on this morning's calendar will be

9    07-235, Frances E. Haylock.  Matter before the Court is a

10   motion for an accounting -- examination of Debtor's

11   transactions with counsel, filed by the George Basiliko

12   Trust, and a motion for sanctions filed by the George

13   Basiliko Trust.

14         The parties would please come forward and state

15   your names for appearance.

16         MR. SHERMAN:  Good morning, Your Honor.  Jeffery

17   Sherman representing the George Basiliko Trust.

18         MR. BURNS:  John Burns on behalf of the Debtor.

19         MR. SHERMAN:  Good morning, Your Honor.  We're

20   here on the two motions that we filed on behalf of the

21   George Basiliko Trust with respect to the circumstances and

22   situation concerning the filing and dismissal of this

23   Chapter 13 case.  The two motions that we filed were,

24   first, under Section 329, to ask the Court to inquire as to

25   the Debtor's transactions with counsel, and the second was

3

1    a motion for sanctions which was attendant to the motion to

2    dismiss by the Chapter 13 Trustee, to which the Debtor

3    consented.  The Court has since entered an order dismissing

4    the case, but retained jurisdiction over these two motions.

5            Your Honor, the George Basiliko Trust is a

6    secured creditor.  We filed a proof of claim in this case

7    indicating that we had a claim of approximately $65,000.00,

8    secured by the Debtor's residence.  In connection with the

9    motion that we filed, however, secured or unsecured, we

10   believe we have standing to question the course of conduct

11   of the Debtor and Debtor's counsel in the filing of this

12   case under the circumstances, as well as to seek the

13   imposition of sanctions, because we believe the

14   circumstances under which the case was filed warrant the

15   imposition of sanctions.

16           As a preliminary matter, Your Honor, the response

17   filed by the Debtor indicated that we had misrepresented to

18   the Court the amount of the fee charged by Debtor's counsel

19   and queried in her pleading where we could possibly have

20   come up with the figure of $2500.00.

21           I would ask the Court, for purposes of this

22   hearing, to take judicial notice of the 2016(b) statement

23   filed and signed by Debtor's counsel, and I would draw the

24   Court's attention to paragraph 1, which states that

25   Debtor's counsel has agreed to accept the sum of $4,500.00

1  as the fee in this case, and then in the section below,

2  paragraph 5, where Debtor's counsel has interlineated

3  additional material.  It states, "A fee of $2,000.00 will

4  be paid to the Chapter 13 plan."  It then goes on to

5  describe how half will be as an admin expense and half will

6  be a non-admin expense.

7       Your Honor, we did the math and we figured out

8  that if $2,000.00 is being paid through the Chapter 13 plan

9  and the Debtor is being charged $4500.00, that somehow,

10  somewhere, the Debtor had paid $2500.00 to Mr. Burns.  If

11  that's incorrect, then obviously our surmise and

12  interpolation of the 2016(b) statement is also incorrect,

13  but I think we are justified in making the assertion that

14  in fact Debtor had paid $2500.00 to Debtor's counsel.

15       Your Honor, the critical issue here is the

16  Debtor's failure to obtain credit counseling prior to the

17  filing of her Chapter 13 case.  This is not a case where

18  you have a serial filer.  Nevertheless, what you do have is

19  a debtor who failed to obtain credit counseling prior to

20  the time that she filed her bankruptcy petition.

21       In light of the fact that the case was

22  subsequently dismissed and the failure of the Debtor to

23  either seek the Court's blessing for the asserted exigent

24  circumstances excusing the pursuit of credit counseling or

25  to cure that failure in any kind of a timely manner, but

1   merely to blithely consent to the Chapter 13 Trustee's

2   motion to dismiss is ample evidence of the Debtor's bad

3   faith.  What you have here is a debtor who has failed not

4   only to obtain pre-petition credit counseling as is plainly

5   required by the rules, you also have a debtor who has

6   failed -- and counsel who has failed -- to follow the rules

7   governing the procedure by which a debtor who seeks an

8   exception to the pre-petition credit counseling requirement

9   obtains from this Court a means of validating or

10  vouchsafing the asserted exception.

11          As pointed out by the Chapter 13 Trustee in her

12  motion to dismiss, the Debtor not only failed to attach to

13  the petition a verified statement, a statement under oath,

14  as to the facts and circumstances under which she sought

15  credit counseling, the time that she sought credit

16  counseling, from whom she sought credit counseling, and her

17  inability to obtain it from them and the reasons given.

18  That statement was supposed to have been filed along with a

19  request that this Court determine whether or not those

20  exigent circumstances are valid.  The Debtor and counsel

21  did not do that.

22          In fact, subsequently to the filing of the

23  petition the Debtor also moved for an extension of time to

24  file all of her supporting documents, including her

25  schedules and statement of financial affairs.  We don't

6

1  even know to this day, Your Honor, whether the Debtor has

2  sufficient income to support a plan and whether there might

3  be a violation of the good faith filing requirement on that

4  basis.  But be that as it may, we have a Chapter 13 debtor

5  and counsel, _____ counsel is and should be fully

6  aware of the requirements that attend to a request for

7  exigent circumstances, and the pleadings here, the papers

8  that were filed here, clearly do not satisfy that.

9         You then have the Debtor indicating, in response

10  to the motion to dismiss, not any explanation as to the

11  exigent circumstances but simply, in light of the

12  Chapter 13 Trustee's request that the case be dismissed

13  stating, "I basically changed my mind."  Again, blithely

14  traipsing into this Court without compliance with the rules

15  and then trying to blithely traipse out of the Court

16  without consequence for her actions.

17         What has become apparent, though, in the pleading

18  that was filed by Debtor's counsel yesterday, is that this

19  case is remarkably like -- and I'm beginning to sound like

20  a broken record here -- remarkably like the case of In re:

21  Whitten, W-H-I-T-T-E-N, 11 B.R. 333.  Just very briefly,

22  Your Honor -- the Court, I'm sure, is familiar with In re:

23  Whitten -- future Judge Bassin had filed a chapter -- I

24  believe it was a Chapter 13 case, for Patrick Whitten and

25  his wife.  In the course of that filing -- and of course we

1  didn't have the 2005 amendment, filing requirements that

2  attach to the commencement of a case back in the early '80s

3  -- as debtor's counsel, Judge Bassin moved several times to

4  extend the time for filing a Chapter 13 plan and the

5  schedules and statements of financial affairs, and finally

6  then-Judge Whalen became somewhat agitated that the debtor

7  and debtor's counsel were using Chapter 13 as a stalling

8  tactic while they sought refinancing.  And ultimately,

9  Judge Whalen entered an order to show cause, to which Judge

10 Bassin responded, and Judge Whalen was, I believe it's safe

11 to say, pretty clear that he was sending a warning to Judge

12 Bassin as a practitioner, but to the bar in general, that

13 those who initiate a Chapter 13 or any bankruptcy case by

14 the filing of a bankruptcy petition had better be able to

15 demonstrate their intent to go forward with it.

16         What you have here now, in the most recent

17 pleading, finally revealed, is the fact that this Debtor,

18 prior to the filing of her Chapter 13 case, was attempting

19 to refinance her debt to the George Basiliko Trust.  You

20 then have the filing of this case, the extensions of time -

21 - again, exactly parallel with Whitten -- and then,

22 although in Whitten the case wasn't a involuntary

23 dismissal, it was a voluntary dismissal -- here you have

24 the Chapter 13 doing the Debtor's work to get the Debtor

25 out of Chapter 13 without ever complying with any of the

1   filing requirements that relate to the pre-petition credit

2   counseling but also without ever filing the schedules and

3   statement of financial affairs or a Chapter 13 plan.

4         And ultimately, what Judge Whalen warned us 25

5   years ago, is exactly what this Debtor did and with the

6   assistance of counsel, which was to delay foreclosure by

7   the George Basiliko Trust on the basis that she would be

8   able to seek and obtain -- and obtained, with the

9   beneficial work done by counsel in this regard -- to obtain

10  a mortgage and then get out of bankruptcy.  And that is a

11  sanctionable offense and it's been a sanctionable offense

12  in this jurisdiction for 25 years.  The bar has been

13  admonished and we all take that to heart.

14        When you combine the fact that this case was

15  filed solely for the purpose of delay while refinancing was

16  sought, and you add to it the fact that the Debtor failed

17  in virtually every respect to satisfy either the

18  requirement of credit counseling or the validation of her

19  excuse from credit counseling, we believe that this case

20  justifies the imposition of sanctions against the Debtor,

21  but also against Debtor's counsel, who is and should be

22  familiar with the requirements that go with a debtor's

23  pursuit of an exception or an exemption from the

24  requirement of pre-petition credit counseling.

25        With respect to the examination of the

1  transactions between the Debtor and her counsel under

2  Section 329, because we proceeded from the extrapolation

3  from the 2016(b) statement that the Debtor paid counsel

4  $2500.00, we regarded the payment of $2500.00 for the

5  filing of essentially eight sheets of paper to be something

6  that the Debtor's counsel would have to explain and somehow

7  validate or have this Court bless as an appropriate fee for

8  the services rendered.  That's against the backdrop of

9  Debtor's counsel not having ensured that the paperwork that

10  was filed, largely over his signature, which includes

11  Exhibit D to the petition which is where the Debtor signs

12  as to the exigent circumstances, that the Debtor's counsel

13  is also culpable in this regard.

14         For these reasons, Your Honor, we think that the

15  Court should inquire as to the value of the services

16  rendered; determine actually how much was even paid, since

17  the math doesn't seem to add up; we believe that sanctions

18  are appropriate in this case by virtue of the Debtor's and

19  Debtor's counsel's failure to comply with the rules; and in

20  the nature of the underlying Chapter 13 filing, which was

21  done clearly for the purposes of delay.

22         Thank you, Your Honor.

23         MR. BURNS:  Good morning, Your Honor.  John Burns

24  on behalf of the Debtor, Frances Haylock.

25         Your Honor, the one thing that Mr. Sherman and I

1  entirely agree on is that this case is going to send a

2  message, and it's going to send a message one way or the

3  other respective to the duties of counsel with respect to

4  the immanency of filings that are made to prevent a

5  foreclosure where the exigent circumstances are those which

6  various courts have spoken to on both sides of the fence,

7  one of which of course is the Giambruno case -- if I

8  mispronounce it, I'm sure the Court will forgive me --

9  cited in my materials, from the Western District of

10 New York, which found that as with the case in this matter,

11 a consult with an attorney prior to a foreclosure where the

12 person has absolutely very little sophistication and files

13 a bankruptcy on the basis of the exigent circumstance of

14 the foreclosure, such represents an exception to the credit

15 counseling waiver -- or, credit counseling requirement

16 under 109(h)1.

17          Your Honor, the facts of this case are very

18 basic.  Ms. Haylock took a loan some years ago of about

19 $59,000.00 -- many years ago -- from this trust, and she

20 has property which we have obtained a valuation for at 325

21 from a realtor, as well as a mortgage broker, and of course

22 the payoff, as we've been able to find out, is somewhere

23 from the proof of claim, around --

24          THE COURT:  Can I get to the specifics of the

25 109(h) eligibility?

1          MR. BURNS:  Yes, Your Honor.  The Debtor --

2          THE COURT:  She did not request credit

3     counseling.

4          MR. BURNS:  My understanding is that she did.

5     She came in on the morning of the petition, that was filed.

6     She is an elderly woman.  She's unsophisticated.  She

7     advised that she had tried to get credit counseling from

8     her church and that she had tried through numerous legal

9     service providers to get her bankruptcy," in order,"

10    quote/unquote.  Those were her efforts.

11         THE COURT:  How long ago had she done that?

12         MR. BURNS:  My understanding from what she told

13    me was that it was since the filing of the foreclosure,

14    which would have been within 180 days.

15         THE COURT:  But how soon prior to her meeting

16    with you --

17         MR. BURNS:  Your Honor --

18         THE COURT:  -- had she made a request from an

19    approved agency.

20         MR. BURNS:  Your Honor, I do not know, a, whether

21    it was from an approved agency because, again, the case law

22    in these attempts, and we rely on that, is fairly diverse.

23    We know that she had gone to her church.

24         THE COURT:  So you did not know on the date that

25    you filed the petition whether she had inquired of an

1   approved agency regarding getting credit counseling

2   services.

3        MR. BURNS:  We were unable to get that

4   information.  That's absolutely correct, Your Honor.

5        And Your Honor, I will say that is also

6   consistent with a number of debtors that are processed

7   where there's more time.  And we later find out that it is

8   an approved agency.  Debtors do not always know.  There are

9   a lot of shops that are set up now, providing consumer

10  credit counseling.  Some of them are approved, some of them

11  are churches, some of them are other groups.  And

12  oftentimes with debtors you have to wade through a

13  tremendous amount that they have gone through, in order to

14  get to the bottom line.

15       THE COURT:  So she said she had gone to her

16  church, and to who else?

17       MR. BURNS:  She'd gone to a number of legal

18  service providers, she said.  She had gone to a relative,

19  who apparently she has no one to help her but she had one -

20  - I can't remember if it's her sister or someone of that

21  ilk, who had gotten online with her and tried to complete a

22  program.  But she, in my judgment, was unsophisticated.

23  When I attempted to discern the exact scope of the credit

24  counseling she'd requested, I was told that it was part of

25  the bankruptcy process.  And I did not have a certificate.

 1  One was not presented to me.  But I relied on what I could

 2  get, in about an hour and a half, before the foreclosure.

 3          And I did make a judgment call, Your Honor.

 4  The judgment call was whether or not, without any more

 5  information than that, I should turn her away and let her

 6  be foreclosed on or whether we should file the petition

 7  and, as is the case with some of the cases I've cited to

 8  you, including the Giambruno case, sometimes due diligence

 9  has to be performed in part after the petition.  You do

10  what you can, get the relevant facts that your client has,

11  and you do everything you can, and I did everything I

12  could, Your Honor.  There's nothing more that I could have

13  done with Ms. Haylock other than turn her away.

14          Now, Your Honor, we did meet with her, we filed

15  her petition, we received $397.00 out of the monies that

16  were paid.  There was a cost for the filing of the

17  petition --

18          THE COURT:  How much did you receive, please?

19          MR. BURNS:  Actually, Your Honor, there is a

20  mistake.  There is one error in the math.  It's $25.00.  My

21  paralegal had calculated the filing fee at a Chapter 7

22  versus a Chapter 13, so the amount, forgive me, is $425.00.

23          THE COURT:  How much did the Debtor pay to you?

24          MR. BURNS:  The Debtor provided to us one

25  thousand, $274.00 goes to the filing fee, $199 --

1          THE COURT:  I'm sorry, she provided to you a

2    thousand dollars?

3          MR. BURNS:  We charged a fee.  In addition to the

4    fee, there are third-party costs which the Debtor must

5    cover.  Those are not fees.  Those costs include a filing

6    fee of $274.00; $199.00 for copies, postage, mail, all of

7    the things that are ordinary in a Chapter 13 or Chapter 7

8    case; and we charged $105.00 for Pacer usage and filing

9    during the course of the case, which is average and

10   consistent based on all the cases that we do as to what an

11   average case is going to cost.

12         THE COURT:  How much money did she hand over to

13   you?

14         MR. BURNS:  One thousand dollars, Your Honor.

15         THE COURT:  Which you then used for the filing

16   fee --

17         MR. BURNS:  Correct, Your Honor.

18         THE COURT:  And you held the other amounts for

19   these two other categories of expenses, and for application

20   to your fee.

21         MR. BURNS:  Well, 425 was left for application to

22   our fee, that's correct.

23         THE COURT:  It doesn't add up to a thousand.

24         MR. BURNS:  Your Honor, forgive me, I don't have

25   a calculator today, but from a thousand dollars we did --

 1          THE COURT:  Less the 274, less the 199, less the

 2   105, right?

 3          MR. BURNS:  Correct, Your Honor.

 4          THE COURT:  Is what you say you collected as a

 5   fee.

 6          MR. BURNS:  Correct.

 7          THE COURT:  So it's 578 in those costs,

 8   subtracted from a thousand.  $422.00.

 9          MR. BURNS:  Three dollars off.

10          THE COURT:  All right.

11          MR. BURNS:  Now.  Our 2016, turning to that,

12   Your Honor, is filed on the guidelines that have been

13   promulgated in the District of Maryland.  I understand this

14   Court has not adopted them, but our charge for a Chapter 13

15   case is $4500.00, consistent with the Safe Haven reached by

16   Judge Keir and his colleagues in the District of Maryland.

17   We have the attachment that the Debtor signed, indicating

18   that all fees are covered, all services are covered,

19   excluding only adversary proceeding, and it is envisioned

20   that we are supposed to receive direct payment for the

21   amount of $2500.00 from a debtor.

22          This Debtor did not have the $2500.00.  So,

23   simply put, the Debtor has to have a payment plan of some

24   sort to get us paid prior to confirmation of her plan.  We

25   have disclosed the $4500.00 fee, 397 being paid which, as I

1   indicated, Your Honor, regrettably has a $22.00 mistake by

2   virtue of the difference between a Chapter 7 filing fee and

3   a Chapter 13 filing fee.  Chapter 7 is, I think, 299, and

4   Chapter 13 is 274.  A simple mathematical mistake.  I

5   apologize for it.  But at the end of the day, $422.00 is

6   what we received.

7        The Debtor came in, we filed her bankruptcy

8   petition, we conducted a number of meetings with her, she

9   had Social Security, she had pension.  My concern, after

10  seeing the proof of claim filed by the Basiliko Trust,

11  because we had had a mortgage broker attempt to contact the

12  attorneys for the Basiliko Trust to get a payoff, and they

13  were unsuccessful in being able to do that in the ordinary

14  process, was to note that the amount of the arrearages, the

15  amount of the interest, was fairly high.

16        We inquired whether she had third-party

17  assistance, we inquired as to her ability to fund this,

18  hopefully through some contributions from her family as

19  well as her Social Security and minimal pension, and at the

20  end of the day, Your Honor, counsel and Debtor made a

21  prudent decision, which is not a sanctionable event, it's

22  not a fraud on the Court, it's not some sort of act to

23  perpetrate loss on a creditor -- we made a decision to

24  recommend to the client that she take a reverse mortgage.

25  Not prior to the petition filing, as suggested by

1    Mr. Sherman -- after the petition filed.

2          There's a representation to the Court that we

3    filed motions to extend schedules and things of that sort.

4    Docket shows none of that.  We didn't, Your Honor, because

5    the decision was made, without wasting a tremendous amount

6    of time, that this Debtor was better off doing something to

7    reorganize through a refinance.

8          Your Honor, my argument, in its essence, is

9    really twofold.  First and foremost, I believe personally,

10   having read a great deal of case law on the subject, that

11   the standard for waivers across the country varies

12   markedly.  We have cases cited by the Chapter 13 Trustee,

13   which of course include none of the cases that are

14   unfavorable to her position, that suggest a very stringent

15   standard, including --

16          THE COURT:  Well, the problem is you did not

17   ascertain that she had, as the statute says, made a request

18   to an approved credit counseling agency and had been

19   unable, within five days, to get credit counseling.  Let's

20   look at the statute again, 109(h)(3)(A)(ii), the debtor

21   files a certification that, quote, "states that the debtor

22   requested credit counseling services from an approved

23   nonprofit budget and credit counseling agency but was

24   unable to obtain the services referred to during the five-

25   day period beginning on the date on which the debtor made

1  the request," unquote.

2          You don't know when she made requests, you don't

3  know who she made the requests to.  I don't see how you

4  could sign the petition with that type of a certification.

5          MR. BURNS:  Your Honor, our belief is that the

6  standard to seek an exception, as stated by Giambruno and

7  under the Romero cases, is a very low standard.  It is a

8  reasonable inquiry standard.  And, Your Honor, we made

9  reasonable inquiry.  Not all debtors are going to be

10  precise in their understanding of exactly when -- as long

11  as it was within the parameters of 280 days -- but within

12  that period when that credit counseling was made.  The

13  District of Maryland has said it doesn't have to be for

14  five days, it can be the day before.

15          My position, Your Honor, and the position I would

16  ask this Court to adopt, is that when counsel is faced with

17  a debtor who doesn't have -- particularly elderly people,

18  people who are not endowed with perhaps the most precise

19  sophistication of understanding of all the efforts they've

20  taken, the petition is to be filed and the eligibility

21  issue is to be worked out through litigation afterward.

22          I firmly believe and ask this Court to adopt --

23  and unlike the section 109(g) case, where you have debt

24  limitations, as in this Court's opinion in Holbrook, where

25  you have a situation involving clear ineligibility -- it's

1    a bright line standard -- Congress enacted 362(v)(21) to

2    ensure that the automatic stay arises when a petition is

3    filed under 109(h) so that those matters can be adjudicated

4    later.

5          Now, obviously, Your Honor, I'm not suggesting

6    this Court open the barn door and suggest any debtor who

7    just has a feel-good experience about credit counseling be

8    permitted to file.  But, Your Honor, there is a standard

9    that is between the two extremes, that I believe this Court

10   should duly consider, particularly - particularly, Your

11   Honor -- when we're dealing with vulnerable debtors who are

12   facing the loss of their home and simply cannot fully

13   articulate, in an hour or two, all of the steps they've

14   made over the period of time since the foreclosure was

15   filed.

16         I believe that if counsel makes an inquiry, and

17   the inquiry establishes that the debtor has taken some

18   steps to make credit counseling occur -- in Giambruno, the

19   debtor didn't even have credit counseling.  The debtor got

20   it afterwards, after consulting with the attorney.  And

21   maybe that's a minority position.  I understand, Your

22   Honor, that this is a situation where we have imperfect

23   facts and we have varying case law around the country, but

24   at the end of the day, Your Honor, if the Court is saying

25   that counsel must have a certification, the trustee --

 1              THE COURT:  Do you have a copy of Giambruno?

 2              MR. BURNS:  I do, Your Honor.  Let me paginate it

 3    to where it says what I've said.

 4              Your Honor, I misspoke.  The case says that in

 5    order to get the post-petition counseling there have to be

 6    two events.  I have the case here for Your Honor, if I may

 7    approach.  I have Giambruno and Romero.

 8              THE COURT:  You can hand it to Ms. Myers.

 9              MR. BURNS:  Thank you.  However, Your Honor, my

10    argument is fundamentally that in cases where we have

11    debtors who do not have all of the specifics of each and

12    every event they have done within the 180 days towards

13    credit counseling but truthfully aver to their counsel and

14    to the Court that they have made a good-faith attempt to

15    get that credit counseling --

16              THE COURT:  You didn't inquire of her did they

17    say they could give it to you within five days or not.  You

18    didn't make that inquiry.  All you asked was had you tried

19    to get credit counseling.

20              MR. BURNS:  Your Honor --

21              THE COURT:  This case, Giambruno, deals with

22    where you make the request prior to the petition, and the

23    agency says, "We can give it to you but it's going to take

24    six days to give it to you."

25              MR. BURNS:  Your Honor --

1          THE COURT:  That type of situation.  You didn't

2    even ask this debtor, "Did you ask whether they could give

3    it to you within five days or not?"  Correct?

4          MR. BURNS:  Your Honor, I will truthfully say

5    that I don't recall.  I do know that I asked her if she had

6    been trying to get credit counseling and when, and her

7    response was she had been ongoing and trying to do it over

8    the last two weeks, but I can't say anything more than

9    that.  It just wouldn't be truthful.  That's what the

10   debtor told me.

11         THE COURT:  All right.

12         MR. BURNS:  Your Honor, there are two issues that

13   this matter raises, as I started off in my presentation

14   with.  The first is whether or not exigent circumstances

15   can except a debtor from credit counseling where the

16   exigent circumstance is the threat and actuality of an

17   immediately pending foreclosure.  I think the law is

18   divided on that issue and I think there are cases, such as

19   Romero and Giambruno which I've provided to you, and the

20   cases in the Eastern District of Virginia, which the

21   Trustee has provided to you.  There is, of course, that

22   case of In re: Childs in Maryland, where they had three

23   cases and they decided that one person had met the

24   standard.

25              This is a new and evolving area of uncertain law,

1  and Your Honor, if counsel is faced with a debtor who

2  cannot specifically and with exactitude articulate the

3  credit counseling efforts, the agency, the person they

4  spoke to, and the time and the date, then maybe the Court's

5  message is that person should never be filed, I beg to

6  differ.

7        This provision was put in the Code, not as a

8  weaponizer for creditors for the U.S. Trustee to strike at

9  debtors, it was put in there as a stop-and-think provision,

10  as the Romero case cites, and certainly as the Childs case

11  from Maryland, our sister jurisdiction, has articulated.

12  The purpose of the statute and construing it in accordance

13  with the congressional records is to ensure the debtor has

14  time to stop and think about what they're doing before they

15  file.  Well, how this Court's going to come down on whether

16  a foreclosure represents an exigent circumstance or doesn't

17  represent an exigent circumstance, I can't divine.  It is

18  an open slate.

19        THE COURT:  Well, assume for the moment that

20  foreclosure the next day is an exigent circumstance.

21  That's not the issue before the Court.  And I don't think

22  Mr. Sherman has argued it.

23        MR. BURNS:  It's certainly the Trustee's issue

24  that he joined in the motion to dismiss on which was the

25  basis for that motion.  One of the issues.

1          But if the Court believes the central issue is

2    the adequacy of the certification, I would note that the

3    case law is divergent.  Some cases have set the standards

4    very strict requiring an affidavit under oath as per the

5    Trustee's citations.  In re: Childs, District of Maryland

6    said the standard's very minimal, it does not require

7    anything under oath.  Some cases have said, and I believe

8    Romero says -- you have it before you, Your Honor -- that

9    some attempt to get credit counseling within the time

10   parameters is sufficient.

11          And, Your Honor, that's the standard I rely on.

12   And if I'm in error and if the Court believes that a

13   stricter standard is required, then so be it.

14          THE COURT:  All right.  Thank you.

15          MR. BURNS:  Your Honor, I would state, on the

16   motion for examination, that to the extent the Court -- we

17   will be revising our 2016 for the additional $22.00, and I

18   do apologize for that mathematical error.

19          THE COURT:  All right, thank you.

20          MR. BURNS:  Thank you.

21          THE COURT:  Mr. Sherman, anything else?

22          MR. SHERMAN:  Nothing, thank you, Your Honor.

23          THE COURT:  Are you satisfied, Mr. Sherman --

24   with respect to the examination of the Debtor's counsel,

25   are you satisfied with his recitations to the Court?

1            MR. SHERMAN:  Your Honor, I understand that

2   Mr. Burns' office was paid a thousand dollars.  What is

3   still not clear, and I thought the Court had touched on it,

4   was the fact that the fee charged, this $4500.00, 2,000 was

5   to be paid under the plan.  I'm not sure which is the error

6   here that leads to the other 1500 now, instead of the other

7   2500 that is somehow otherwise paid.

8            THE COURT:  It hasn't been paid, according to

9   Mr. Burns.  All he's received in money from the Debtor is

10  a thousand dollars.  There is an agreement that he's to

11  receive additional sums.  I can address the question of

12  whether he should collect any additional sums.  But as far

13  as monies actually received, he's only received a thousand

14  dollars, and I can address whether he should be required to

15  disgorge that thousand dollars.

16           MR. SHERMAN:  That's fine, Your Honor.  Then I

17  would ask the Court -- although it may be repetitive; I

18  apologize -- to have Mr. Burns break down that thousand

19  dollars once more?

20           THE COURT:  I'll recite to you what the evidence

21  shows and Mr. Burns can confirm it, that I've interpreted

22  it correctly.

23           Mr. Burns collected a thousand dollars, of which

24  $274.00 was for the filing fee.  Another $199.00 was for an

25  expense account for copies, postage, mail, and so forth.

1   And $105.00 was a Pacer expense account, simply an amount

2   that his firm bills for general Pacer usage in a case.  And

3   then the balance of $578.00 was pure fees.

4           Correct, Mr. Burns?

5           MR. BURNS:  Your Honor -- forgive me, Your Honor.

6   Let me just --

7           THE COURT:  No, I'm sorry -- 422 was for fees --

8           MR. BURNS:  Four twenty --

9           THE COURT:  -- 578 was the aggregate of the 274,

10  199, and 105, so $422.00 for fees, Mr. Sherman.  Correct,

11  Mr. Burns?

12          MR. BURNS:  [Not on microphone]  That's correct,

13  and Your Honor, I would be more than happy to testify or

14  proffer to that.  My calculation was 199 for costs and 105

15  based on what we actually pay.  There's no profit in there.

16  Copies are based on actual toner that we buy, we're not

17  even at the 20 cent a copy mark (inaudible) so those are

18  fees that -- those are costs that simply cover out-of-

19  pocket on a case.

20          THE COURT:  All right, thank you.

21          MR. SHERMAN:  Your Honor, I remember -- and this

22  is going back a number of years -- sitting in front of

23  Judge Bostetter in the Eastern District of Virginia, and

24  Roy Zimmerman proceeded with probably a 90-minute

25  presentation on why it's legitimate for counsel to charge

1   $1.25 per page for incoming faxes, and I thought it was

2   just one of those groan-inducing sort of procedures.  I

3   would never ask Mr. Burns to explain how much his toner

4   costs.

5           However, I do have a question about how somebody

6   runs up $105.00 on Pacer, considering it's free to

7   electronically file something and it cost 8 cents per page

8   to download something.  But, you know, it's a minimal

9   amount in the grand scheme of things.

10          MR. BURNS:  [Not on microphone]  Your Honor, I'd

11  be happy to respond to that.  When we have to provide

12  documents to third parties, when we have to print them off

13  and mail them off to numerous creditors, and when we have

14  to serve copies, we always go off of Pacer because it's

15  actually cheaper than the time, particularly when we have

16  to have documents that contain, in Maryland, the signature

17  line or actually the date and timeline that they've now

18  finally, you know, _____ on these pleadings, so we can

19  verify that they're, in essence, Court-certified pleadings.

20          THE COURT:  I don't need to get into that.

21          MR. BURNS:  Thank you.

22          THE COURT:  Mr. Sherman, can I take Mr. Burns's

23  representations to the Court, factual representations to

24  the Court, as evidence with respect to the question of

25  sanctions against the Debtor and against Mr. Burns?

1            MR. SHERMAN:  Your Honor, I'm sort of of two

2    minds.  I'm concerned that the Debtor's not here.  And that

3    Mr. Burns's representations are clearly hearsay across the

4    board.  Nevertheless, I think that under the circumstances

5    it's probably not worth the investment of additional time

6    and resources by all the parties in the Court to try and

7    cure that deficiency in the Debtor's presentation.  So for

8    purposes of this hearing, we'll accept Mr. Burns's

9    representations as to what the Debtor told him, as he

10   related it to the Court.

11           THE COURT:  I guess if I conclude the petition

12   shouldn't have been filed, it didn't meet Rule 9011

13   standards, the issue comes down to who gets sanctioned.

14   The Debtor's counsel obviously, but should the Debtor be

15   sanctioned when it's the attorney who's making a legal

16   determination that the petition can be filed.  The Debtor,

17   it is true, is signing the Exhibit D that says that she did

18   contact an approved agency and was unable to get credit

19   counseling within five days, and she's not here to show

20   that was an accurate representation and Mr. Burns has no

21   way of knowing whether it was an accurate representation.

22   If it's a legal representation, Rule 9011 says I'm not to

23   sanction the debtor but to sanction the attorney instead.

24           If it's a factual representation, that's

25   different.  The way it works is monetary sanctions may not

1   be awarded against a represented party for a violation of

2   subdivision (b)(2), and (b)(2) is the one dealing with

3   legal contentions that are supported by a non-frivolous

4   argument for the extension, modification or reversal of

5   existing law or the establishment of new law.

6           MR. SHERMAN:  I understand that, Your Honor, but

7   the debtor in this case did sign Exhibit D and the

8   petition, and the circumstances I think have been adduced

9   before the Court, so I'll obviously commit that to the

10  discretion of the Court.

11          Thank you, Your Honor.

12          THE COURT:  All right.  This is a hearing on two

13  motions.  The first is a motion to examine the Debtor's

14  transactions with counsel, and the second is a motion for

15  sanctions.  Under Section 329 of the Bankruptcy Code, the

16  Court can examine the reasonableness of fees charged by

17  debtor's counsel and order disgorgement of fees to the

18  extent that the fees are unreasonable, and the motion for

19  sanction deals with the petition having been filed when the

20  Debtor was not eligible to be a debtor.

21          The Debtor met with Mr. Burns shortly before a

22  foreclosure sale, and Mr. Burns prepared a petition to stop

23  the foreclosure sale.  Section 109(h) of the Bankruptcy

24  Code, part of the 2005 amendments to the Bankruptcy Code,

25  now includes that the debtor obtain credit counseling prior

1    to the initiation of the bankruptcy case unless the debtor

2    comes with an exception.  And the only exception that the

3    Debtor could possibly have come within is Section

4    109(h)(3), but there's no evidence that she actually came

5    within that exception.  That's what she invoked on her

6    petition.

7            That provision provides that, "Subject to

8    paragraph (b), the requirements of paragraph 1 shall not

9    apply with respect to a debtor who submits to the Court a

10   certification that, (i) describes exigent circumstances

11   that merit a waiver of the requirements of paragraph 1;

12   (ii) states that the debtor requested credit counseling

13   services from an approved, nonprofit budget and credit

14   counseling agency but was unable to obtain the services

15   referred to in paragraph 1 during the five-day period

16   beginning on the date on which the debtor made that

17   request; and (iii) is satisfactory to the Court," end of

18   quote.

19           The crucial aspect of this is Section

20   109(h)(3)(A)(ii) and the requirement that the debtor state

21   that she requested credit counseling services from an

22   approved nonprofit budget and credit counseling agency but

23   was unable to obtain the services referred to in

24   paragraph 1 during the five-day period beginning on the

25   date on which the debtor made that request.

1          She so certified on her petition, but there's no

2    evidence that she actually contacted an approved credit

3    counseling agency and requested the required services and

4    was told that she couldn't get them for more than five

5    days.

6          Mr. Burns made inquiry of her as to what she had

7    tried to do before meeting with him.  She said she'd gone

8    to her church and had contacted various legal service

9    providers and had dealt with her relative.  There may even

10   have been an attempt to get online and do credit

11   counseling.  But there's no evidence that there was a

12   request made and that the Debtor was unable to get credit

13   counseling within five days.

14         Mr. Burns represents that the Debtor was not

15   sophisticated, didn't understand what she had actually been

16   doing, wasn't able to articulate it, but that doesn't

17   constitute a reasonable basis for Mr. Burns, as an

18   attorney, forming the belief that she had actually complied

19   with Section 109(h)(3)'s requirement that she have

20   requested credit counseling services and had been unable to

21   obtain the services during the five-day period beginning on

22   the date on which she made the request.  Mr. Burns should

23   not have filed the petition.

24         I don't question Mr. Burns's subjective good

25   faith in filing the petition.  He had a debtor who was in

1  dire financial circumstances.  She stood to lose her house,

2  which he has represented in his papers had substantial

3  equity in it, compared to the amount of debt owed to the

4  lender.  But Section 109(h) sets forth an objective

5  standard as to whether a debtor is eligible for bankruptcy

6  or not, and in signing the petition Mr. Burns was

7  representing that she was indeed eligible to file the

8  petition.  That was not a belief formed after reasonable

9  inquiry.  There was no foundation for that belief.  And

10  accordingly, I find that sanction are appropriate.

11         The only case that has addressed this issue that

12  I could find that deals with Section 109(h) is In re:

13  Lafeminia, spelled L-A-F-E-M-I-N-I-A, 2006 Westlaw, 980520

14  (Bankruptcy Middle District of North Carolina, February

15  21st, 2006).  And in that case there was no effort to

16  ascertain whether Section 109 had been satisfied.  And the

17  Court concluded that the petitions were without evidentiary

18  support, and the conduct in signing and filing of petitions

19  was objectively unreasonable and constituted a violation of

20  Rule 9011(b).

21         Mr. Burns has urged that he did not proceed in

22  bad faith, but as the Court said in In re: Lafeminia,

23  quote, "No requirement exists that an action must be

24  undertaken in bad faith to violate Rule 9011; the rule only

25  requires a showing of objectively unreasonable conduct,"

1   [citing Fellheimer, Eichen and Braverman versus Charter

2   Technologies, 57 F.3d 1215, 1225 (3d Circuit, 1995)].

3           For all those reasons I conclude that it is

4   appropriate to impose sanction against Debtor's counsel.

5           Mr. Sherman can submit an affidavit of attorneys

6   fees -- or, statement of attorneys fees, and within 11 days

7   after service Mr. Burns can object to that statement of

8   attorneys fees if he thinks they're unreasonable.

9           That leaves the question of whether I should

10  impose sanctions against the Debtor herself.  Mr. Burns has

11  represented that the Debtor is highly unsophisticated.  She

12  was relying upon Mr. Burns in preparing the petition.  She

13  didn't know whether what she had done was with an approved

14  credit counseling agency.  All she knew was that she had

15  been making efforts and had been unsuccessful.  And to some

16  extent the determination of whether to sign the

17  certification that she came within Section 109(h)(3) was a

18  legal conclusion, because it depended upon what is an

19  approved agency.  And certainly the facts suggest that she

20  had been trying for some time to get approved counseling.

21  On that basis, I don't believe it is appropriate to award

22  sanctions against the Debtor herself.  It required a legal

23  judgment as to whether what she had done came within the

24  statute.

25          That leaves the motion for an examination of the

1    Debtor's counsel's fees and the reasonableness of those

2    fees.  Mr. Burns collected a thousand dollars from the

3    Debtor; $274.00 of which was for the filing fee, and the

4    balance of which was $420.00 purely for fees and an

5    additional set of reserves of $304.00 for copies, postage

6    and mail, and Pacer usage.  Obviously in this case there

7    was very little in the way of Pacer usage, and because the

8    case was dismissed early on there was not much in the way

9    of copies, postage or mail.

10          The Debtor benefited from the services in the

11   sense that she was able to stave off foreclosure.  It may

12   have bought her time to refinance her property.  She's

13   attempting to get a reverse mortgage.

14          Mr. Burns could have given her advice that he

15   could not file the petition on her behalf because she was

16   not eligible and that if she did file by herself, that she

17   would be ineligible and her case would be dismissed, and

18   the consequence would be that she would not be entitled

19   automatically to an automatic stay throughout the duration

20   of the rest of her subsequent filing of a case if she were

21   to file a second case.  Section 362(c)(3) imposes a

22   restriction on how long an automatic stay will last in a

23   second filing within the same year.

24          Mr. Burns acted, I think, in good faith,

25   subjectively, but in violation of his duties as a member of

1  the bar not to file a petition when the debtor is not

2  actually eligible to file a petition.  The thousand dollars

3  is a modest sum.  He could have charged a fee for

4  consulting with him about the propriety of filing a

5  bankruptcy case and the consequences were she to file the

6  bankruptcy case.  Once the bankruptcy case was filed, it

7  necessitated the filing of papers in the case.

8        The focus of Section 329 is not to sanction

9  misconduct.  That's the function of 9011.  Section 329 is

10  designed to assure that debtors are not being over-charged

11  with respect to the services of counsel.  Section 329(b)

12  provides that, "If such compensation exceeds the reasonable

13  value of any such services, the Court may cancel such

14  agreement, order the return of any such payment to the

15  extent excessive."  Certainly, the $274.00 filing fee would

16  have been incurred by the Debtor herself had Mr. Burns

17  simply told the Debtor she had to go it on her own if she

18  decided to file a bankruptcy petition.

19        I don't think that the fees were unreasonable for

20  the services rendered.  The thousand dollars is a modest

21  sum.  It actually benefited the Debtor.  It shouldn't have

22  been done, but that's a question for Rule 9011 sanctions.

23  And that purpose is being served by reason of the Court

24  granting the motion for imposition of sanctions.

25        With respect to the balance of the fee, I don't

1   believe it is appropriate for the Debtor's attorney to

2   collect additional fees.  This case concluded without any

3   work being done beyond the filing of the petition and then

4   responding to the motion to dismiss.  Beyond the thousand

5   dollars already collected, of which $700.00 went towards

6   fees and towards expense reserves when the actual expenses

7   were not really that substantial in this case, I don't

8   think that the Debtor's attorney is entitled to any

9   additional compensation.

10              So pursuant to Section 329(b) I will cancel the

11  balance of the fee agreement, but not order any

12  disgorgement of fees.

13              Thank you, counsel.

14              MR. SHERMAN:  Thank you, Your Honor.

15              (Whereupon, the proceedings were concluded.)

16

17

18

19

20

21

22

23

UNITED STATES OF AMERICA )
                         )    Case No. 07-00235
DISTRICT OF COLUMBIA    )

       I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States Bankruptcy Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

                        _____
                         PAUL R. CUTLER

       I do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

                        _____
                         BONNIE FURLONG

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - -x
In Re:                :
                     :
FRANCES EDGAR HAYLOCK     :
                     :
        Debtor    : Case No. 07-00235
                     :
       (Chapter 13)  :
                     : Washington, D.C.
- - - - - - - - - - - - - -x January 15, 2008

TRANSCRIPT OF HEARING ON DECLARATION
REGARDING STATEMENT OF LEGAL FEES
REGARDING MOTION FOR SANCTIONS
BEFORE THE HONORABLE S. MARTIN TEEL, JR.
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

On behalf of the George Basiliko Trust:

JEFFERY SHERMAN, ESQ.

On behalf of the Debtor:

JOHN BURNS, ESQ.

Proceedings recorded by the Court, transcript produced
By Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C. 20005, 202-347-5395, www.pro-typists.com
B2325A/bf

**P R O C E E D I N G S**

1

2        THE CLERK:  The next case will be Case Number

3   07-235, Frances E. Haylock.  Matter before the Court is a

4   hearing regarding the Statement of Legal Fees Regarding the

5   Motion for Sanctions, filed by George Basiliko Trust.

6        The parties would please come forward and state

7   your names for appearance.

8        MR. SHERMAN:  Good morning, Your Honor.  Jeffery

9   Sherman representing the George Basiliko Trust.

10       MR. BURNS:  John Burns on behalf of the Burns law

11  firm, Your Honor.

12       MR. SHERMAN:  As Your Honor may recall, the Court

13  entered a initial memorandum with respect to the issue of

14  attorneys fees and directed that the parties confer with

15  respect to whether or not a reduced figure might be agreed

16  upon.  Mr. Burns and I have discussed the matter of a

17  reduction of the attorneys fees to be awarded as a monetary

18  sanction, and we've agreed on the sum of $2,000.00.  That's

19  acceptable to us.  I believe it remains acceptable to

20  Mr. Burns.

21       There is a corollary to this, Your Honor.  And

22  that is that Mr. Burns continues -- and I don't want to

23  speak for him, and he can address this -- but Mr. Burns

24  continues to take issue with the Court on the substance of

25  the Court's findings.  We have indicated to Mr. Burns that

1   we did not have a problem as part of the resolution of the

2   attorneys fees issues with any request addressed to the

3   Court seeking to have the Court withdraw the findings with

4   respect to Mr. Burns' conduct.  We would not affirmatively

5   seek it, but if he sought it we don't think that it's

6   inappropriate, given the fact that he is paying a monetary

7   sanction, that the findings themselves be vacated.

8           Mr. Burns has indicated that that request would

9   be forthcoming, and as a corollary to the agreement on the

10  amount of the attorneys fees I wanted to advise the Court

11  that this was something else that was out there and still

12  pending.

13          Thank you, Your Honor.

14          MR. BURNS:  Your Honor, it is not my practice to

15  revisit findings and conclusions before the Trial Judge

16  once, as Your Honor has made them, they are clear.

17  However, Your Honor, I must in this instance.

18          Your Honor, this is an issue which frequently

19  arises.  The issue involving whether or not an attorney

20  must file a Chapter 13 bankruptcy or Chapter 7 bankruptcy

21  in order to halt relief that is hours, sometimes less than

22  hours, away.  Your Honor, in this case the record

23  demonstrated that the Debtor advised my office that she had

24  inquired as to credit counseling over a two-week period,

25  and that the inquiry was both through the Internet and

1   through a church.  I determined, by a preponderance

2   standard, I believe, given the vagueness and indeterminacy

3   of the law on this point , that I owed a duty to the client

4   to file her.

5           I ask the Court to note that there was no self

6   interest in this decision.  There are all too few debtors'

7   counsel these days, in this jurisdiction and elsewhere,

8   willing to take cases on fees for emergency filings of

9   several hundred dollars.  This decision was made solely to

10  benefit the Debtor and it was made solely, in my judgment

11  and discretion, as the attorney in the case, that it was

12  the right thing to do.

13          Your Honor, I believe it was the right thing to

14  do because I see a schism or a division between the Court's

15  findings on what the law is in this district, versus other

16  districts, and the Court's disagreement with certain

17  decisions, including DePinto and others, as a matter of

18  substance, which the Court is entitled to make.  There is

19  no doubt, there is no ambiguity, in the Court's findings

20  concerning that.

21          However, Your Honor, as an attorney, where there

22  is ambiguity in the law, ambiguity as to the standard as

23  what constitutes an approved credit counseling agency, as

24  has been set forth in my opinions to this Court, citing

25  Mezza and Hess, just for a few, it is clear, Your Honor,

1   that the courts across the country have bent over backward

2   to attempt to avoid imposing what some judges, including

3   the Court in the case Your Honor cited, In re Enlow, at

4   373 B.R. 134, recognize that this credit counseling is

5   nonsense.  It's an imposition by Congress for an

6   educational requirement that has been interposed as a

7   barrier, unintended by all of those who have written on the

8   subject, to impede the debtor's access to bankruptcy

9   relief.

10          Your Honor, a new bill, I understand, has been

11  proposed before the House of Representatives to eliminate

12  credit counseling where there's a pending foreclosure.

13  I do not know the current status of that bill.  This is a

14  very unsettled issue of law, and has been for some time.

15          Now, Mr. Sherman has come into this Court, filed

16  a motion to advocate as directed by his client and he

17  should be commended for that, which is why I have settled

18  with Mr. Sherman.  He's made his money, he's earned his day

19  in Court, and he deserves credit and recognition for that.

20          However, Your Honor, a finding of bad faith

21  against counsel, which as the Court noted in its oral

22  rendition back so many months ago in June, was based on an

23  objective standard, not a subjective standard, carries

24  implications against counsel that go beyond this case, and

25  certainly chill the ability of counsel to make decisions

1  where the law is unclear.  Your Honor, I have cited in my

2  memorandum, and I'm not going to regurgitate authorities

3  and citations that are pending before this Court and have

4  been addressed.  However, if contrary authority exists, as

5  Colliers has recognized, there should be a finding in favor

6  of counsel to avoid sanctions under the discretionary

7  standards placed in effect by the Judicial Rules Committee,

8  I believe as early as 1997.

9          Counsel -- namely myself -- in the Court's view

10  made the wrong judgment call.  That's clear.  I

11  respectfully understand and disagree, respectfully, with

12  the Court's findings and conclusions in that regard.

13          However, in finding that I should be personally

14  subject to a Rule 11 sanction, monetary or non-monetary --

15  and what Mr. Sherman did not mention was, irrespective of

16  the Court's decision, whether the Court vacates its

17  findings or does not vacate its findings, his payment for

18  what he's done, as the Court recognized in raising the

19  motion that the Court deemed important, is a final matter,

20  not to be revisited by me.  However, Your Honor, in

21  counsel's duty in an emergency situation to make a

22  decision, the Court should give deference to counsel's

23  judgment as to Rule 11 where counsel can articulate a split

24  in the case law and can articulate, as in In re DePinto,

25  the case which recognized that the five days could straddle

1    the petition date or in Mezza or Hess or any of the other

2    decisions that oddly enough deal with debtors who did not

3    go to approved credit counseling agencies but end up having

4    a waiver approved or having the decision approved not to

5    dismiss the case.  These are opinions which I cited and I'm

6    -- again, Your Honor, not going to go into in great detail,

7    they are in the memorandum.  If the Court wishes me to,

8    I will of course enhance a filing respective to those

9    positions.

10          But the bottom line, Your Honor, why I'm here

11   asking the Court to reconsider its ruling as concerns a

12   sanction, is because even if the Court finds, as it has,

13   and concludes, as it has, that I made the wrong choice to

14   file someone where I should have done something different,

15   I made that wrong choice not in a vacuum of authority and

16   certainly with no subjective bad faith.  The Court in In Re

17   Enlow, which Your Honor has cited for the proposition that

18   counsel can be sanctioned for an ineligibility issue

19   concerning 109(H) dealt with counsel who sat on a case

20   while the certificate expired over 189 days.  And it was

21   clear under no theory advanced by any Court or by that

22   counsel that the debtor was ineligible.

23          This Court is no stranger to eligibility issues,

24   the Court having previously determine in other cases cited

25   in my materials that under 109(g) a debtor who files where

1   there's an 180-day bar, is not going to deemed eligible

2   where there's a clear standard that sets forth, without a

3   whole lot of variance in the case law, why that debtor

4   shouldn't be in this case.

5         I have had three cases come to me, Your Honor,

6   since this, who did not have waivers and even when they

7   came without the waiver, I didn't file them.  That's wrong.

8   And the reason it's wrong, Your Honor, is because I don't

9   know what level of proof is going to be required.  If I

10  come in with a debtor who testifies that she went to an

11  approved credit counseling agency within five days but

12  can't remember, I don't want to be subject to another

13  sanction for failing to inquire further into the third-

14  party agency, all while maybe an hour or 45 minutes or less

15  is ticking before foreclosure.

16        In summary, Your Honor, I understand the Court's

17  findings, I understand the Court's conclusion.  A finding

18  that a counsel -- this counsel, who has appeared in good

19  faith before this Court since 2000, at least, and did

20  nothing but file a debtor who was trying to protect, on a

21  very limited fee basis, should not carry a sanction that

22  will carry him forward and tar him for the rest of his

23  career.

24        I understand the Court's findings and

25  conclusions, as I've said, and I will be seated.  Thank

1  you, Your Honor.  I would ask that the Court vacate its

2  findings and conclusions relative to the sanction without

3  effect or impact on the monies paid to Mr. Sherman.

4         MR. SHERMAN:  Your Honor, Mr. Burns is correct.

5  I did neglect to mention that regardless of the disposition

6  of the findings with respect to bad faith, that we have

7  agreed that the monetary sanction would be paid and that

8  would fully resolve the monetary sanction permanently.

9         Your Honor, when we came before the Court and

10  took the position that the filing was in bad faith and

11  asked the Court to impose sanctions, it was consistent with

12  the prevailing law.  The Court entered its findings and

13  imposed its sanction.  Mr. Burns and I have resolved the

14  issue of the monetary sanction.  That leaves open the issue

15  of the narrative sanction, if you will.

16         Mr. Burns makes a number of valid points about

17  his subjective belief, his subjective understanding, and

18  his subjective conduct.  The initial position that we took

19  was notwithstanding that the law was clear, the facts were

20  clear, were sufficiently clear to put him on notice that

21  his conduct was inconsistent with what the law required.

22         At this juncture, Your Honor, with Mr. Burns'

23  agreement as to the monetary sanction and Mr. Burns'

24  representation that his conduct has already changed to

25  conform with the substance of the Court's ruling on the

1  substantive issue of his bad faith, we don't necessarily

2  think that there is value added, or even justice serviced,

3  by, at this juncture, perpetuating the narrative sanction

4  against him.  Our view at this point is with his agreement

5  to pay a monetary sanction, that I guess it's sort of an

6  "enough is enough" approach.  I believe Mr. Burns has taken

7  the Court's ruling to heart, whether he agrees with it or

8  not, that is as to the ultimate disposition the ruling of

9  the Court, whether or not the particular narrative and

10  rationale that underpins that conclusion, he has agreed to

11  perform the monetary part.  We don't have a problem at this

12  juncture with Mr. Burns being relieved of the Court's

13  findings with respect to his conduct constituting bad faith

14  on his part.

15          Your Honor, there is a part of me that just wants

16  to go on a 20-minute diatribe against the statute that

17  effectuated this and other, in my view, terribly anti-

18  debtor provisions in the 2005 Amendments.  The Court knows

19  all too well my views of that statute, in both the process

20  and in the substance, and I sort of sympathize, based on my

21  27 years of practice, with someone in Mr. Burns' position

22  who has a client in a desperate position with the clock

23  ticking, whether of their own making or not, who seeks

24  counseling.  Counsel who want to go out and try to do good

25  on behalf of clients and achieve a result for clients

1   become goal-oriented.  And we all are goal-oriented.

2          I'm sure there are some lawyers out there who

3   love the process and find value in the process rather than

4   the result being sought.  But I don't believe that

5   Mr. Burns, at this juncture, needs to have the imprimatur

6   of the Court's findings as to the bad faith of his conduct,

7   when I believe his decision, right or wrong, which resulted

8   in a monetary sanction, is a decision that I can't say I

9   would not have made if I had a client come to me in the

10  same extremis in which his client did.

11         I'm not making excuses for Mr. Burns.  I am

12  saying that Mr. Burns, as an advocate for his client's

13  position and a protector of the least among the prospective

14  clients who come all of our way -- anybody who's done

15  consumer debtor work -- we see it every day.  We get calls

16  every day, every week, every  month.  And I can't say that

17  that I would not put my neck on the line and take the

18  chance in order to prevent someone who is on the verge,

19  essentially, of being homeless or becoming a ward of the

20  state, asking me to do that.  I would potentially be in

21  Mr. Burns' position and make the decision that this person

22  is someone worth fighting for and taking the risk that the

23  Court might disagree with me.

24         And especially in a situation where Mr. Burns has

25  case authority to support the substantive decision, never

1  mind the argument that provisions of the 2005 Amendments

2  are unconstitutional or represent a departure from 250

3  years of debtor laws in this country.  But just that his

4  goal-oriented decision, which was to protect his client's

5  interests with his understanding of what he could and could

6  not do, I believe that Mr. Burns has learned his lesson and

7  he has agreed, on a nonrefundable basis, to pay the

8  sanction, but I don't believe that it serves his purpose --

9  or serves justice, I should say -- to perpetuate against

10  him affirmative findings that he engaged in bad faith

11  conduct.

12         And on that basis we expressed to Mr. Burns that

13  we would not oppose, and in fact are going so far as to

14  support, the Court vacating its findings, notwithstanding

15  the fact that he is still going to go ahead and suffer the

16  imposition and pay and perform the monetary sanction.

17  Thank you, Your Honor.

18         THE COURT:  I'll impose sanctions of $2,000.00.

19  There's been a request to vacate the Court's -- I assume

20  it's the Interim Memorandum Decision, which recites the

21  Court's prior interim order, and then goes on to explain

22  why, despite the arguments raised in the reply to the

23  attorneys fees sought by the George Basiliko Trust,

24  Mr. Burns, the attorney for the Debtor, attempts to seek

25  reconsideration of the Court's prior ruling, and the Court

1  rejects those arguments.

2        Mr. Burns now seeks to vacate the findings that

3  were included in both the interim order and in the interim

4  memorandum decision, and he argues that he has proceeded in

5  good faith in this case and counsel for the George Basiliko

6  Trust agrees that that's the case as well, and both of them

7  point to what is an extremely harsh statute enacted by

8  Congress.  Mr. Burns reminds the Court anew that, as

9  discussed in the interim memorandum decision, that courts

10 have held that 109(h) is not jurisdictional and can be

11 waived, and that may indeed be the case.

12        But this is an analogous, I think, to an attorney

13 who files a claim on behalf of a client that is clearly

14 barred by the statute of limitation in hopes that the claim

15 will go to judgment in favor of the plaintiff because the

16 other side may not raise the defense.  But if the defense

17 is raised and it was plain that the lawsuit was barred, it

18 seems to me that Rule 11 sanctions would be appropriate

19 because a party has been put to defending a lawsuit when,

20 clearly, the lawsuit should not have been pursued.  And

21 this is analogous to Mr. Burns, on behalf of his client, in

22 good faith filed a petition to stop a foreclosure sale.

23        It was a courageous act, because Section 109(h)

24 had not been satisfied and it was exposing Mr. Burns to the

25 risk of Rule 9011 sanctions if anyone sought them, and

1    unfortunately someone did seek them and it resulted in the

2    interim order and the interim memorandum decision that

3    Mr. Burns seeks to have vacated.

4           I am not prepared to vacate the findings in the

5    two documents.  They are not inconsistent with Mr. Burns'

6    position that he acted in good faith.  The statute is

7    indeed a harsh statute and unfortunately, as I've noted in

8    my decision, it's the law of the land.  And other parties,

9    creditors in a bankruptcy case, are entitled to raise

10   109(h), and if the bankruptcy case was barred by Section

11   109(h) because the debtor wasn't eligible to file a

12   petition, not having gotten pre-petition credit counseling,

13   then that creditor's entitled to invoke Rule 9011.

14          Mr. Burns says that there would be cases where

15   his client comes in, in the future, and says that he got

16   credit counseling, the foreclosure sale is going to occur

17   within minutes, and it's a question of filing the petition

18   to stay the foreclosure in the hopes that the client is

19   right that he did get pre-petition credit counseling, or

20   saying, "No, I can't do it because it might subject me to

21   sanctions."  The standard of inquiry required by Rule 9011

22   is flexible, depending upon how much time an attorney has

23   within which to make inquiry, and that is a manner in which

24   this type of concern can be addressed.

25          In this case, I don't think Mr. Burns disputes

1  that he knew that his client had not gotten the requisite

2  Section 109(h) credit counseling.  He proceeded in good

3  faith in the sense that if Section 109(h) is not

4  jurisdictional, he believed that it might be appropriate to

5  file the petition, in the hopes that no one would raise

6  109(h) as a defense to dismiss the case.  But that doesn't

7  relieve him of Rule 9011 sanctions, and I thought I made

8  that clear in my interim memorandum decision.

9          The Enlow decision, for example, imposed Rule

10  9011 sanctions even though the court declined to dismiss

11  the case despite the fact that Section 109(h) had not been

12  complied with.  There it was the attorney who had filed the

13  petition, even though the certificate of credit counseling

14  had expired.  It was more than 180 days old.  And the

15  attorney overlooked that the certificates only have a

16  limited duration that is effective for filing bankruptcy

17  cases.  But that doesn't change anything.  It still remains

18  the fact that if a petition is barred by Section 109(h) and

19  a reasonable inquiry should have revealed that, then the

20  Court must impose sanctions based upon the violation of

21  Rule 9011.

22          I'll enter an order that awards $2,000.00 in

23  sanctions and that clarifies the Court's interim memorandum

24  decision to recite that it is amended to recite that it

25  should not be taken as a finding that Mr. Burns proceeded

1  in bad faith, the evidence being that Mr. Burns proceed in

2  good faith in an attempt to employ the bankruptcy laws to

3  assist a debtor facing a foreclosure sale.

4          Was it the eve of bankruptcy?

5          MR. BURNS:  Forgive me, Your Honor?

6          THE COURT:  Was it the even of bankruptcy or was

7  it the day of bankruptcy filing?

8          MR. BURNS:  It was the day; it was about an hour

9  and a half before the foreclosure.

10         THE COURT:  All right.  Thank you, counsel.

11         MR. SHERMAN:  Thank you, Your Honor.

12         MR. BURNS:  And thank the Court for finding me

13  courageous.

14         MR. SHERMAN:  I thank Mr. Burns for finding me

15  having won.  Thank you, Your Honor.

16         THE CLERK:  All rise.  This Court will stand in a

17  recess until 10:30.

18         (Whereupon, the proceedings were concluded.)

19

20

21

22

23

24

UNITED STATES OF AMERICA )
                         )    Case No. 07-00235
DISTRICT OF COLUMBIA     )

       I, PAUL R. CUTLER, do hereby certify that a

recording of the foregoing proceedings in the above matter

was duplicated from an original recording by the Office of

the Clerk, United States Bankruptcy Court for the District

of Columbia, and that said duplicate recording of the

proceedings was transcribed under my direction to

typewritten form.


                         _____
                              PAUL R. CUTLER

       I do hereby certify that the foregoing transcript

was typed by me and that said transcript is a true record

of the recorded proceedings to the best of my ability.


                         _____
                              BONNIE FURLONG