UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In re:                              *
                                        Civil Case No. .  1:08-cv-00325-rjl
                                    *   Case No.  07-00235

**FRANCES HAYLOCK**
                                    *   (Chapter 13)

                                    *

            Debtor
*     *     *     *     *     *     *     *     *     *     *     *     *

_____


**APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**
(From the Honorable Martin Teel)

_____

_____

BRIEF FOR THE APPELLANT
_____


                    John Douglas Burns, Esquire (#22777)
                    The Burns LawFirm, LLC
                    6303 Ivy Lane; Suite 102
                    Greenbelt, MD 20770
                    (301) 441-8780

                    Counsel for Appellant


ll

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………..3

STATEMENT OF APPELLATE JURISDICTION………………….. 5

STATEMENT OF THE ISSUES PRESENTED…………………... 5

STANDARD OF REVIEW…………………………………………5

STATEMENT OF THE CASE……………………………………. 6

STATEMENT OF THE FACTS…………………………………… 7

ARGUMENT……………………………………………………… 17

CONCLUSION…………………………………………………… 31

## TABLE OF AUTHORITIES

*Case Law*

Butler v. Shaw, 72 F.3d 437 (4th Cir. 1996)…………………………………………… 5

In re Three Flint Hill, LP, 213 B.R 292 (D. Md. 1997)………………………………… 5

In re Calvert, 907 F.2d 1069 (11th Circ. 1990)………………………………………… 5

In re CHG Int'l, 897 F.2d 1479 (9th Cir. 1990)………………………………………… 5

Cooter & Gell v. Hartmzrx Corp., 496 U.S. 384 (1990)……………………………… 5, 20

In re Vivado, 94 B.R. 785 (Bankr. D.C. 1989)………………………………………….. 18

Runfola & Assoc., Inc. v. Spectrum Rptng. II, Inc. 88 F.3d 368 (6th Cir. 1996)……….. 18

Pope v. Federal Express Corp, 49 F.3d 1327 (8th Cir. 1995)……………………………. 18

Warren v. Guelker, 29 F.3d 1386 (9th Cir. 1994)………………………………………..... 18

Murphy v. Cuomo, 913 F. Supp. 671 (N.D.N.Y. 1996)………………………………… 18

Rodick v. City of Schnectady, 1 F.3d 1341 (2d. Cir. 1993)……………………………. 19

Tough v. O'Keefe, 144 F.R.D. 587 (D.C. Cir. 1992)…………………………………… 19

Brady v. Marks, 7 F.Supp 2d 247 (N.D.N.Y. 1998)…………………………………… 19

Shepardson v. Nigro, 179 F.R.D. 150 (E.D.PA. 1998)………………………………….. 19

In re: Sargent, 136 F.3d 349 (4th Cir. 1998)……………………………………………. 19

Salovaara v Ecker, 222 F.3d 19 (2d Cir. 2000)………………………………………….. 21

DeBartolo Group v. Richard E. Jacobs Group, Inc………………………………………. 21

Ametex Fabrics, Inc. v. Just in Materials, Inc., 140 F.3d 101 (2d Cir. 1998)…………. 21

Patelco Credit Union v. Sahni, 262 F.3d 897 (9th Cir. 2001)…………………………. 21

Hernandez v. Joliet Police Dept., 197 F.3d 256 (7th Cir. 1999)……………………….. 21

Souran v. Travelers Ins. Co., 982 F.2d 1497 (11th Cir. 1993)…………………………. 21

Muller v. Sherburne, 147 F.R.D 34 (N.D.N.Y. 1993)………………………………….. 21

Paganucci v. City of New York, 993 F.2d 310 (2d Cir. 1993)…………………………. 22

Lipiro v. Remee Products, 75 F.Supp. 2d 174 ((S.D.N.Y. 1999)………………………. 22

In re Wilson, 246 B.R. 59 (Bankr. N.D..N.Y. 2006)…………………………………… 22

In re Hollsberg, 208 B.R. 755 (Bankr. D.C. 1997)…………………………………….. 23

In re Tujuana Hawkins, (Case No. 06-00057) (Ch. 7 Bankr. D.D.C. 2007)………….. 24

In re Tracey A. Brown, (Case No. 06-10534) (Ch. 13 Bankr.D.Md. 2006)…………… 24

In re Carey, 341 B.R. 798 (Bankr. M.D. Fla. 2006)……………………………………. 24

In re Romero, 349 B.R. 616 (Bankr. N.D. Cal. 2006)…………………………………. 24

In re Giambrone, 2007 Bankr. LEXIS 1058 (W.D.N.Y. – 3/29/07)…………………… 24, 27

In re Henderson, 2007 Bankr. LEXIS 1042 (Bankr. N.D. Tx. 3/28/07)……………….. 25, 27

In re Hubbard, 333 B.R. 377 (Bankr. S.D. Tex 2005)…………………………………. 25

In re Childs, 335 B.R. 623 (Bankr. D. Md. 2005)…………………………………….. 25

In re DiPinto, 336 B.R. 693 (Bankr. E.D. Pa 2006)…………………………………… 25, 26, 27

In re Wilson, 346 B.R. 59 (Bankr. N.D.N.Y. 2006)…………………………………… 27

In re Meza, 2007 U.S.Dist. LEXIS 48430 (E.D.Cal. 2007)………………………….. 28

In re Hess, 347 B.R. 489 (Bankr. D. Vt. 2006)……………………………………….. 28

<u>In re Manalad</u>, 360 B.R. 288 (Bankr. C.D. Cal. 2007)………………………………… 29
<u>In re Kernan</u>, 358 B.R . 537 (Bankr. D.Ct. 2007)………………………………………… 29
<u>In re Nichols</u>, 362 B.R. 88 (Bankr. S.D.N.Y. 2007)……………………………………… 29
<u>In re Davey</u>, 2006 Bankr. LEXIS 1798 (Bankr. D. Vt. 2006)………………………29

***Statutes:***
28 U.S.C. § 158………………………………………………………………………… 5
11 U.S.C. § 109………………………………………………………………………… 6, 11,
     15, 18, 19, 221, 23, 25, 26, 27, 28, 29, 30
11 U.S.C. § 707………………………………………………………………………… 29
11 U.S.C. § 362………………………………………………………………………… 23, 24

***Rules:***
Fed. R. Bankr. P. 8013…………………………………………………………………… 5
Fed. R. Civ. P. 11……………………………………………………………………… 5, 6, 13,
     14, 17, 18, 19, 20, 21, 22, 27,30

***Treatises:***
<u>Collier on Bankruptcy,</u> (15th Edition Revised 2005)………………………………… 17, 18,
     19, 27,
<u>Wright & Miller,</u> Volume 4 (2004)……………………………………………………… 19, 20-
     21,

## STATEMENT OF APPELLATE JURISDICTION

The United States District Court for the District of Columbia (the "District Court") has jurisdiction under 28 U.S.C. § 158(a) to hear appeals from final Orders of the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court"). Pursuant to 28 U.S.C. § 158(c), appeals taken under 28 U.S.C. § 158(a) must be taken within the time provided by Fed. R. Bankr. P. 8002(c). This Court has jurisdiction to hear the instant appeal as it arises from a final Order entered by the Bankruptcy Court, and because the appeal was timely noticed.

## STATEMENT OF THE ISSUES PRESENTED

(i)     Whether the Court Erred in The Standard to Be Applied to Counsel Relative to a Rule 11 Sanction;

(ii)     Whether the Court Abused Its Discretion in Imposing Sanctions in this Case.

## STANDARD OF REVIEW

Conclusions of law made by the Bankruptcy Courts are subject to *de novo* review by this Court. See eg, Butler v. Shaw, 72 F.3d 437, 441 (4th Cir. 1996); In re Three Flint Hill, L.P., 213 B.R 292, 297 (D. Md. 1997); In re Calvert, 907 F.2d 1069, 1071 (11th Cir. 1990); In re CHG International, 897 F.2d 1479, 1482 (9th Cir. 1990); . Although generally, a Bankruptcy Court's findings of fact should not be set aside unless they are clearly erroneous, See Fed. R. Bankr. P. 8013, a finding of Rule 11 sanctions bears an abuse of discretion standard. See, Cooter & Gell v. Hartmarx Corporation, 496 U.S. 384 (1990).

## STATEMENT OF THE CASE

Appellant counsel filed an emergency Chapter 13 bankruptcy petition for a frightened, elderly and infirm woman, Mrs. Frances Haylock ("Mrs. Haylock" or the "Debtor"). Mrs. Haylock is one of the District of Columbia's unfortunate and impoverished residents who lives alone, with little family contact. She was facing a foreclosure sale that would deprive her of her only residence and home in less than two hours after the bankruptcy filing. Counsel's filing saved her home from foreclosure. Counsel was only minimally compensated the sum of $422.00 for attorneys fees in the case, and performed the majority of the work in the case without any likelihood of being paid.

Mrs. Haylock had not obtained "credit counseling" prior to filing her case, as is generally provided for by 11 U.S.C. § 109(h). A "waiver" may apply wherein exigent circumstances exist which merit a deferral of the requirements until a later time, and where the debtor requested credit counseling services from an approved non-profit budget and credit counseling agency, but was unable to obtain the services within the 5 day period beginning on which the Debtor made the request. The waiver must also be satisfactory to the court. Mrs. Haylock, an unsophisticated timorous woman with an emergency, was only able to identify an attempt with a relative to obtain the required counseling on the internet, and her efforts to get the counseling from her church within the two weeks preceding the bankruptcy case..

Appellant counsel was sanctioned under Fed. R. Bankr. P. 9011 for failing to sufficiently interrogate his client as to exactly what approved agencies she applied to obtain the counseling within a five day period from the commencement of her efforts. This sanction was issued against counsel despite the Bankruptcy Court's finding that counsel proceeded in good

faith in filing this bankruptcy case, on a theory that 11 U.S.C. § 109(h) is not jurisdictional, and with the recognition by the Court that case law from around the country was diverse on the subject of what was required to meet a waiver or for that matter compliance with Section 109(h) of the Code.

Counsel was sanctioned despite a gross disparity of case law throughout the land over what actually constitutes compliance with the "credit counseling" provisions.  Counsel was fined $2,000.00 and shamed with an extraordinary sanction that should not have been issued. Counsel has appealed whether a sanction should have issued at all.  Counsel has not appealed the monetary sum which has already been paid to the Appellee's counsel who fought his battle, won his argument, and was paid.  This dispute is about only one thing: Whether counsel should have been sanctioned at all given what he did to assist a client in need by arguing for a good faith extension of existing law before the tribunal, not about a sum of $2,000.00.

Appellant counsel appeals on the basis that (i) the Bankruptcy Court misinterpreted the standard under Rule 11 to be a strict liability sanction when the court disagrees with the legal authorities presented by counsel, irrespective of dispute among the Courts; and (ii) the issuance of a sanction imposed to pay another party's legal fees was unduly onerous given the Court's discretion in the matter, and Appellant counsel's good faith in the matter.

## STATEMENT OF THE FACTS:

On or about May 3, 2007 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code of 2005 (the "Code").  (See, Record Pleading #1).  The visit by Mrs. Haylock to counsel's office occurred approximately one to one a half hours before a scheduled foreclosure.  (Record; Transcript-January 15, 2008: pp. 16;

Lines 6-9) (Hereinafter, TR 6/20/07; pp.__;lns.____.;  TR 1/15/08: pp.__; lns. ___.).  The Petition

listed that the Debtor was seeking a waiver from providing a credit counseling certificate pursuant

to 11 U.S.C. § 109(h)(3). (See, Record Pleading #1).

      On or about May 15, 2007, the Chapter 13 Trustee filed a Motion to Dismiss

Chapter 13 Case Based on 109(h) Ineligibility (the "Motion to Dismiss") (See, Record Pleading

#10).    The Debtor filed a candid response averring that she was choosing not to prosecute the

case.  (See, Record Pleading #15).  The George Basiliko Trust (the "Appellee") filed a Reply to the

Motion to Dismiss, and a Motion for Sanctions and a Motion for An Accounting (See, Record

Pleadings # 16, 17 and 20).  In the Reply to the Motion to Dismiss and the Motion for Sanctions,

Appellee contended that no good faith basis existed for the filing of the Debtor without credit

counseling and that the filing was a bad faith petition to stay a foreclosure.  In the Motion for

Accounting, the Appellee challenged a fee which it alleged Appellant received in the amount of

$2,500.00 for the bankruptcy case.  (See, Record Pleadings # 16, 17 and 20).

      On or about June 11, 2007, the Debtor filed a Preliminary Response to the Reply to

the Motion to Dismiss, the Motion for Sanctions and the Motion for Accounting (See, Record

Pleading #26), which was supplemented on June 18, 2007, by a Supplemental Response to the

Reply to these pleadings (See, Record Pleading #34).  The Supplemental Response plainly

presented facts which articulated a good faith basis underlying exigent circumstances, and

presented a good faith basis for agreeing to the dismissal because of the prospect of a reverse

financing as a better option.  Counsel, as argued in the Supplemental Response, has a duty to

pursue whatever is best for the client's interests, including consenting to dismissal if a better option

has presented itself such as refinancing.  The Court entered an Order Dismissing the case on June

14, 2007.  (See, Record-Pleading #29).

On June 20, 2007, the Court conducted a hearing on the Motion for Sanctions and the Motion for Accounting.  (See, Record-Docket Sheet).  No evidence was taken through this dispute.  At the outset, the record established that the Appellee was a secured creditor which filed a secured claim for $64,928.51 (of which only $39,227.00 represents the actual loan itself), and the remainder reflecting an interest rate of 9% which may have been compounded for some time.  (See, Record Pleading #34)  Indeed, Mrs. Haylock only borrowed $59,000.00 from Appellee GB on or about December 18, 1984, and the undisputed opinion of value herein was $325,000.00.  (See, Record Pleading #34).  Although Appellant duly argued this was a "free for all" spending exercise by a grossly oversecured lienholder, the Court did not address this argument. (See, Record Pleading #34).

Further, the onset of this post-bankruptcy litigation by the Appellee actually put the Debtor in the hospital, and terrified her from further dealings with these problems such that she lost contact with counsel.  (See, Record Pleading #34)  It is chilling if not horrific to think that the Appellee entity that was attempting to take away Mrs. Haylock's only residence could have frightened her from cooperation with her own legal efforts by the only counsel who cared for her interests, the Appellant.

The Appellee averred that this was a bad faith bankruptcy because, in essence:

You then have the Debtor indicating, in response to dismiss, not any explanation as to the exigent circumstances but simply, in light of the Chapter 13 Trustee's request that the case be dismissed stating 'I basically changed my mind.'  Again, blithely traipsing into this Court without without compliance with the rules and then trying to blithely traipse out of the Court without consequence for her actions."  TR 6/20/07: pp. 6; lns. 9-16.

The crux of the Appellee's argument is that counsel should be blamed for the Debtor's alleged inability to fund a plan, and that there was a suggestion that the intent from the inception of the case was to dismiss or permit dismissal and refinance, in order to pay off the Appellee's client, which Appellee suggested was sanctionable.

TR 6/20/07: pp. 6-8.

The Court, turning its attention to Appellant counsel inquired of the Section 109(h) eligibility. TR 6/20/07; pp. 10; lns. 24-25. In response, Appellant counsel was asked what steps he had taken to know that the Debtor had attempted to obtain credit counseling. Appellant replied:

> My understanding is that she did [attempt to obtain counseling]. She came in on the morning of the petition, that was filed. She is an elderly woman. She advised that she had tried to get credit counseling from her church and that she had tried through numerous legal service providers to get her bankruptcy 'in order' quote/unquote. Those were her efforts.

TR 6/20/07: pp. 11;lns. 4-10.

Appellant Counsel candidly apprised the Court that he did not know whether it was from an approved credit counseling agency because the case law is very diverse on this subject, and counsel is entitled to rely upon that dissonance in case law. TR 6/20/07: pp. 11; lns. 21-23.

The Court presented the question in a more focused fashion:

> Q:    So, you did not know on the date that you filed the petition whether she had inquired of an approved agency regarding getting credit counseling services.
>
> A:    We were unable to get that information. That's absolutely correct, your Honor. And your Honor, I will say that is also consistent with a number of debtors that are processed where there is more time. And we later find out that it is an approved agency. Debtors do not always know. There are a lot of shops that are set up now, providing consumer credit counseling. Some of them are approved, some of them are churches, some of them are other groups. And oftentimes with debtors you have to wade through a tremendous amount that they have gone through in order to get to the bottom line.

Q:      So she said she had gone to her church, and who else?

A:      She'd gone to a number of legal service providers, she said.  She had gone to a relative, who apparently she has no one to help her but she had one – I can't remember if its her sister or someone of that ilk, who had gotten on line with her and tried to complete a program.  But she, in my judgment, was unsophisticated. When I attempted to discern the exact scope of the credit counseling she'd requested, I was told that it was of the bankruptcy process.  And I did not have a certificate.  One was not presented to me.  But I relied upon what I could get, in an hour and a half, before the foreclosure.

And I did make a judgment call, your Honor.  The judgment call was whether or not, without any more information than that, I should turn her away and let her be foreclosed on or whether we should file the petition and as is the case with some of the cases I have cited to you, including the Giambruno case, sometimes due diligence has to be performed in part after the petition.  You do what you can, get the relevant facts that your client has, and you do everything you can, and I did everything I could your Honor.  There is nothing more than I could have done with Mrs. Haylock other than turn her away.

TR 6/20/07; pp. 11-13.

Further, Appellant counsel believed, and candidly argued that the elements of 11 U.S.C. § 109(h) are non-jurisdictional, and unlike 11 U.S.C. § 109(g), do not bear on eligibility per se, but rather must be determined on a case by case basis after the fact.  TR  6/20/07:  pp. 18-19.  Further, Appellant had supplied case law on the issue before the hearing.  (See, Record Pleading #34)

The simple fact that Appellant relied upon was that the case law on what constituted a valid effort to seek credit counseling and the time frames for the action is collectively diverse, if not chaotic, across the country.  However, the Court pressed on the exacting language of the statute without considering any interpretations of it by case law:  "Well, the problem is that you did not ascertain that she had, as the statute says, made a request to an approved credit counseling

agency and had been unable, within five days, to get credit counseling." TR 6/20/08: pp. 17 ; lns

16-20.

> Appellant replied;
>
> Your Honor, our belief is that the standard to seek an exception, as stated by the Giambruno and under the Romero standards, which is a very low standard. It is a reasonable inquiry standard. And, your Honor, we made reasonable inquiry. Not all debtors are going to be precise in their understanding of exactly when – as long as it was within the parameters of 280 days – but within that period when that credit counseling was made. The District of Maryland has said it doesn't have to be for five days, it can be the day before.
>
> My position, your Honor, and the position I would ask this Court to adopt, is that when counsel is faced with a debtor who doesn't have –particularly elderly people, people who are not endowed with perhaps the most precise sophistication of understanding of all the efforts they've taken, the petition is to be filed and the eligibility issue is to be worked out through litigation afterward. . . . . [W]hen we are dealing with vulnerable debtors who are facing the loss of their home and simply cannot fully articulate, in an hour or two, all of the steps they've made over the period of time since the foreclosure was filed.

TR 6/20/07: pp. 19; lns. 10-25.

Finally, as to the direct challenge of bad faith by Appellee in that this was some ill

minded effort to simply buy time to cause a refinance to occur from the inception of the case, the

Appellant explained that Mrs. Haylock's income, social security, pension, were considered and

balanced same against a no payment reverse mortgage for this client. A "prudent" _post-petition_

decision was made by the Debtor that she was better off with a reverse mortgage rather than a

high interest payment each month. TR 6/20/07: pp. 16; lns. 16-25. The Court found no

subjective bad faith. TR 6/20/07: pp. 30; lns 24-25.

The Motion for an Accounting was denied by the Court because, contrary to the

baseless allegations of the Appellee, the undersigned had not received $2,500.00 relative to an

attorney fee, but only the sum of $422.00. TR 6/20/07: p.25. That was the only fee received in this case. The Court found the sum to be a modest sum, and one which benefited the Debtor. TR 6/20/07: p. 33-34.

The Court reasoned that Appellant counsel violated Fed. R. Bankr. P. 9011 not because of any subjective bad faith, but rather because of a "showing of objectively unreasonable conduct." TR 6/20/07: pp. 31; lns 24-25. Accordingly, sanctions issued against Appellant counsel rather than the client, and only against Appellant counsel, and the required sanction was the imposition of Appellee's attorneys fees for the entire case. TR 6/20/07: pp.32.

On or about June 27, 2007, the Appellee submitted its statement of legal fees, which was $3,315.00. (Record-Pleading #40). The Appellant briefed his response and filed same on July 9, 2007 (Record –Pleading #41), which outlined the panoply of disagreement between bankruptcy courts nationwide on just what is required to establish a good faith attempt to satisfy 11 U.S.C. § 109(h)(3), and the proper standard for discretion under Fed. R. Bankr. P. 9011.

On November 5, 2007, the Bankruptcy Court entered its Interim Memorandum and Order Setting Hearing on the sanction amount. (Record-Pleadings # 43, 44).

The Bankruptcy Court ruling rejected that counsel had a non-sanctionable basis for filing Mrs. Haylock on her infirm, but self-evident and earnest, attempts to receive credit counseling. The Bankruptcy Court rejected the distinction presented by Appellant on the subject of broadly varying case law on the subject of waivers or counseling compliance as it related to counsel's personal responsibility under Fed. R. Bankr. P. 9011.  Given the enormous variance as to what constitutes an acceptable credit counseling "agency", or even when the 5 day period must arise, a conceptual difference must be made between the trial court's disagreement with adverse

precedent, and counsel's culpability for a Rule 11 sanction simply because the trial court does not

like the cited case law that exists to the contrary of its position.  The Bankruptcy Court,

disagreeing or ignoring such cited authorities, simply recited its own position on the subject of

Section 109(h) waivers, and therefore found the sanction against counsel valid.  The Bankruptcy

Court's Order Setting Hearing required an evidentiary hearing on the amount of fees and costs

being sought by the Appellee, and requesting that the parties confer to resolve the fee to be

imposed.  (Record-Pleadings # 43, 44).

On January 15, 2008, the Bankruptcy Court conducted a final hearing on the matter.

 (Record – Docket #48).  Therein, Appellant counsel and Appellee recited that they had conferred

and stipulated to a figure of $2,000.00 (TR 1/15/08:  pp. 2; lns. 12-20) without prejudice however,

to Appellant's strenuous and continued position that no sanction was appropriate and that the

Bankruptcy Court should vacate the findings.  (TR 1/15/08: pp. 3; lns 1-12)

Appellant counsel proffered to the Court that this was, in his view, a very

significant case because counsel was being sanctioned for the Court's disagreement with adverse

authority on jurisdictional eligibility itself, and was doing so in case which was undesirable for

most counsel to have taken on, which the undersigned only did due to his care for a particularly

vulnerable client.  (TR 1/15/08:  pp. 4-8). :

Moreover, Appellant delineated what he believes is a clear difference between

disagreement with precedent by a Court, and imposing a sanction on counsel for disagreeing with

the presiding tribunal's view on the subject:

> Your Honor, I have cited in my memorandum, and I am not going to regurgitate
> authorities and citations that are pending before this Court and have been addressed.
> However, if contrary authority exists, as Collier's has recognized, there should be a

finding in favor of counsel to avoid sanctions under the discretionary standards placed in effect by the Judicial Rules Committee, I believe as early as 1997.

Counsel-- namely myself—in the Court's view made the wrong judgment call. That's clear.  I respectfully understand and disagree, respectfully with the Court's findings and conclusions in that regard.  . . .

However, in counsel's duty in an emergency situation to make a decision, the Court should give deference to counsel's judgment as to Rule 11 where counsel can articulate a split in the case law and can articulate, as in In re Di Pinto, the case which recognized that the five days could straddle the petition date, or in Mezza or Hess, or any of the other decisions that oddly enough deal with debtors who did not go to approved credit counseling agencies but end up having a waiver approved or having the decision approved not to dismiss the case.

(TR 1/15/08:  pp. 6-7).

Appellant presented a personally chilling scenario of having to decline at least three clients due to the Court's overreaching sanction, which creates uncertainty as to what degree counsel should have to interrogate his own client to obtain third party proof of compliance with this Court's view on the credit counseling requirements:

I have had three cases come to me, your Honor, since this who did not who did not have waivers and even when they came without the waiver, I didn't file them. That's wrong.  And the reason its wrong your Honor is because I don't know what level of proof is going to be required.  If I come in with a debtor who testifies that she went to an approved credit counseling agency within five days but can't remember, I don't want to be subject to another sanction for failing to inquire further into the third party agency, all while maybe an hour or 45 minutes or less is ticking before foreclosure.

(TR 1/15/08:  pp. 8; lns 5-15).

The Court rejected Appellant's position.  Specifically, although giving recognition in passing to the fact that other case law has established that Section 109(h) is not jurisdiction, and thus may be waived (TR 1/15/08:  pp. 13; lns. 8-10), the Court revealed its true basis for imposing sanctions was because the Bankruptcy Court viewed Rule 11 as akin to a strict liability statute:

The Bankruptcy Court opined:

[T]his is analogous, I think, to an attorney who files a claim on behalf of a client that is clearly barred by the statute of limitations in hopes that the claim will go to judgment in favor of the plaintiff because the other side may not raise the defense. But if the defense is raised and it was plain that the lawsuit was barred, it seems to me that Rule 11 sanctions would be appropriate because a party had been put to defending a lawsuit when, clearly, the lawsuit should not have been pursued. And this is analogous to Mr. Burns, on behalf of his client, in good faith filed a petition to stop a foreclosure sale.

It was a courageous act, because Section 109(h) had not been satisfied and it was exposing Mr. Burns to the risk of 9011 sanctions if anyone sought them, and unfortunately someone did seek them and it resulted in the interim order and the interim memorandum decision that Mr. Burns seeks to have vacated.

I am not prepared to vacate the findings in the two documents. They are not inconsistent with Mr. Burns position that he acted in good faith.

(TR 1/15/08:  pp. 13-14)

On or about January 23, 2008, the Bankruptcy Court issued its Final Memorandum of Decision and Final Order (Record-Pleadings #49, 50).  The Court's written ruling lauds Appellant's courageous acts, it renews the Court's own conclusion that Appellant counsel was properly sanctioned because Section 109(h) governs eligibility, a jurisdictional bar to entry to the Court, despite the existence of contrary and abundant authority to the contrary.  In short, the Memorandum imposes a sanction upon Appellant as a necessary result of the Bankruptcy Court's conclusions on eligibility despite the existence of abundant and cited authorities by Appellant counsel to the contrary position.  (Record-Pleadings #49, 50).

On February 4, 2008, the undersigned Appellant filed a Notice of Appeal to the United States District Court (Record-Pleadings #53).  This appeal followed.

## **ARGUMENT:**

I.    *The Bankruptcy Court Erred in The Standard to Be Applied to Counsel Relative to a Rule 11 Sanction:*

Fed. R. Bankr. P. 9011(b) contains the quality of representations made to the Bankruptcy Court by an attorney signing a petition, pleading, written motion, or other paper.  The Rule provides in relevant part that:

> [B]y representing to the Court (whether by signing, filing submitting or later advocating) a petition, pleading, written motion, or other paper, an attorney … is representing that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances—(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) *the claims, defenses and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law, or the establishment of new law;* (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence, or if specifically so identified, are reasonably based on a lack of information and belief.

Fed. R. Bankr. P. 9011(b) (2005) (Emphasis supplied).

Pursuant to Fed. R. Bankr P. 9011(c), "if after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court *may*, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms or parties that have violated subdivision (b) or are responsible for the violation."  (Emphasis supplied).

"Before its 1997 amendment, Rule 9011 purported to mandate the imposition of a sanction for violation of the rule.  If a document were signed in violation of the rule, sanctions were required."  See, Collier on Bankruptcy, ¶¶ 9011-19, 9011.07[1] (15th Edition Revised 2005).  The standard now is intended to provide more discretion, and for the reasons discussed below, this Bankruptcy Court should have exercised its discretion against finding Appellant to be sanctioned.

The 1993 Advisory Committee Note to Rule 11 notes the non-compulsory nature of a monetary sanction and alternatives to such a decree.  The person to be sanctioned need not be subject to a monetary sanction, and the range of possibilities range from private reprimand or admonishment to other sanctions, which may be monetary.  Monetary sanctions can range from payment of all or just part of a party's attorney's fees.  See, Collier on Bankruptcy, ¶¶ 9011-25, 9011.09[3] (15th Edition Revised 2005).  Indeed, the Bankruptcy Court for the District of Columbia in determining a sanction against an attorney for filing an ineligible debtor who was jurisdictionally not properly within Chapter 13 under Section 109(g) should be directed to return an $850.00 fee charged to the debtor.  See, In re Vivado, 94 B.R. 785 (Bankr. D.C. 1989).

Significantly, "[a]ny sanction must be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.  In determining the amount of the sanction, the court may consider not only the sanctionable conduct but also the offending party's ability to pay."  See, Collier on Bankruptcy, ¶¶ 9011-24, 9011.09[1] (15th Edition Revised 2005), citing to Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc., 88 F.3d 368 (6th Cir. 1996); Pope v. Federal Express Corp., 49 F.3d 1327 (8th Cir. 1995); Warrant v. Guelker, 29 F.3d 1386 (9th Cir. 1994), Murphy v. Cuomo, 913 F. Supp. 671 (N.D.N.Y. 1996).  "If the precedents under the 1993 amendment to Civil Rule 11 are followed in the bankruptcy context, it would appear that non-monetary sanctions will be preferred to monetary sanctions."  See, Collier on Bankruptcy, ¶¶ 9011-24, 9011.09[1] (15th Edition Revised 2005).

The Court should weigh a variety of factors; namely, "whether the conduct was willful or negligent, whether it was part of a pattern of activity or an isolated event, whether it infected the entire pleading or only one particular count or defense, whether the person has

engaged in similar conduct in other litigation, whether it was intended to injure, what effect it had

on the litigation process in time or expense, what amount, given the financial resources of the

responsible person, is needed to deter that person from repetition in the same case; and what

amount is needed to deter similar activity by other litigants." See, Collier on Bankruptcy, ¶¶ 9011-

20, 9011.07[2] (15th Edition Revised 2005). "The tendency of courts is to be cautious about the

imposition of sanctions. For example, in determining whether a particular claim is merely a losing

argument or is losing and sanctionable, the court is 'to resolve all doubts in favor of the signer.'"

See, Collier on Bankruptcy, ¶¶ 9011-20, 9011.07[2] (15th Edition Revised 2005), citing Rodick v.

City of Schenectady, 1 F.3d. 1341, 1351 (2d Cir. 1993). "[O]ne of the objectives of the 1993

amendment [to Rule 11] was to reduce the frequency and tactical utilization of the sanction

practice that had developed under the 1983 amendment of the rule." Wright & Miller, Volume 4,

§ 1336.1 (2004).

   "Rule 11 should not be read with a jeweler's loupe so that the rigidities of the Rule

loom so large as to obscure the purposes of the Rule itself." Trough v. O'Keefe, 144 F.R.D. 587,

595-96 (D.C. Cir. 1992). Sanctions may be in the nature of a warning, and need not rise to the

dramatic level of a monetary award. Brady v. Marks, 7 F. Supp. 2d 247 (N.D.N.Y. 1998). Should

the Court have reservations over counsel's legal theory, admonishment is an alternative to

monetary sanctions. See, Shepherdson v. Nigro, 179 F.R.D. 150 (E.D.PA. 1998). The choice of a

sanction should be balanced to meet the underlying purpose of Rule 11; namely, remediating harm

and enhancing judicial administration, and a trial court's sanction should be declared unnecessary

to the extent it exceeds those purposes. See, In re Sargent, 136 F.3d 349 (4th Cir. 1998). A legal

claim is objectively frivolous when it has no chance of success under existing precedent. Id. In

the case at bar, the Appellant's argument that Section 109(h) was non-jurisdictional, and the disparate case law concerning good faith attempts respective to a waiver which had been recognized by a number of tribunals across the country were acknowledged by the Bankruptcy Court. However, the trial court in this case simply believed that its position was better than the authority cited, and sanctioned the Appellant. This is not the correct standard.

II.    *The Bankruptcy Court Abused Its Discretion in Imposing Sanctions in This Case:*

1n 1990, the Supreme Court issued <u>Cooter & Gell v. Hartmarx Corp</u>, 496 U.S.384 (1990), a case having its genesis in the District of Columbia Circuit, in which Justice O'Connor opined on the abuse of discretion standard applicable to Rule 11 determinations by presiding trial Courts. Therein, the trial court should determine factual questions of an attorney's prefiling inquiry and the factual basis of the pleading, and whether "[l]egal issues are raised whether a pleading 'is warranted by existing law or a good faith argument for changing the law.'" <u>Id</u> at 399. "Finally, the District Court must exercise its discretion to tailor an 'appropriate sanction.'" <u>Id.</u>

Although appellate courts are to provide factual deference to the trial courts on Rule 11 matters, "an appellate court reviewing legal issues in the Rule 11 context would be required to determine whether, at the time the attorney filed the pleading or other paper, his legal argument would have appeared plausible." <u>Id</u> at 403-04. Although superceded by subsequent amendments to Fed. R. Civ. P. 11, which were designed in part to eliminate the mandatory "shall" from the District Court's dictate upon a determination of sanctionable conduct, <u>Hartmarx</u> emphasized the importance of appellate review to avoid chilling counsel's challenge to trial court sanctions. <u>Id</u> at 408. The Advisory Committee Note to the 1993 amendment to Rule 11 has long since now

recognizes that abuse of discretion is the appropriate standard to be applied, See, <u>Wright & Miller</u>, § 1337.4 (2004)

       Abuse of discretion can perhaps best be summarized as ensuring that any sanction decision is made with restraint and discretion.  <u>See, eg, Salovaara v. Ecker</u>, 222 F.3d 19 (2d Cir. 2000).  Material errors of law by the tribunal strongly weigh in favor of finding abuse of discretion.  <u>See, DeBartolo Group v. Richard E. Jacobs Group, Inc</u>., 186 F.3d 157 (2d Cir. 1999).  "The district court abuses its discretion where its decision is based on an *erroneous view of the law* or on a clearly erroneous view of the evidence."  <u>Ametex Fabrics Inc. v. Just in Materials, Inc.</u>, 140 F.3d 101, 108-09 (2d Cir. 1998) (Emphasis supplied); <u>See also, Patelco Credit Union v. Sahni</u>, 262 F.3d 897 (9th Cir. 2001).  Imposing sanctions for failure to conduct adequate pre-filing inquiry is abuse of discretion where trial court's decision is based upon erroneous view of the law. <u>See, Hernandez v. Joliet Police Dep't</u>, 197 F.3d 256 (7th Cir. 1999).

       It is an abuse of discretion to sanction counsel for filing a complaint where plaintiff is aware that defendant may have a significant affirmative defense.  <u>See, Souran v. Travelers Ins. Co.</u>, 982 F.2d 1497 (11th Cir. 1993). Notably, the Honorable Martin Teel herein likened the filing of this petition to that very instance.  (TR 1/15/08: pp. 13-14).  Indeed, similarly including a plaintiff who had a very difficult claim against defendant as a matter of proof demonstrated harmless misconduct, within the bounds of fair play of litigation.  <u>See, Muller v. Sherburne</u>, 147 F.R.D. 34 (N.D.N.Y 1993).  With all due respect to the Bankruptcy Court, it is the duty of the Appellant counsel in his exercise of zealous advocacy to take a course of action that favor's the client's interests which existing case law would support, irrespective of the Bankruptcy Court's view of that existing case law.

"While the aim of [Rule 11] is true and clear, its varying objectives necessitate different standards of review in accordance with the violated aspect. . . . [W]e review the buoyancy of legal arguments *de novo*." Paganucci v. City of New York, 993 F.2d 310 (2d Cir. 1993). Courts should refrain from issuing sanctions where they limit the enthusiasm and creativity which is the lifeblood of the law. Accord, Lipiro v Remee Products, 75 F.Supp. 2d 174 (S.D.N.Y. 1999).

As a matter of substantive law, perhaps no statutory provision has been roundly criticized and virtually eviscerated by broadly ranging judicial interpretation than Section 109(h) of the Bankruptcy Code of 2005. With all due respect to the Honorable Martin Teel, the inquiry does not begin and end at the words of the statute itself. Simply put, what constitutes a credit counseling agency or when the arbitrarily selected 5 days must transpire is a subject of significant debate among the federal bankruptcy courts.

"Few sections of the newly enacted BAPCPA have been as uniformly misunderstood as § 109(h)(3)(A), perhaps because the whole concept of compelling an individual already buried in a financial morass to undergo credit counseling during the 180 day period pre-filing a s condition precedent to actually filing a petition, makes about as much sense as requiring spouses locked in a bitter divorce to attend a marriage counseling seminar before a judge can sign a decree dissolving their marriage." In re Wilson, 346 B.R. 59, 62 (Bankr. N.D.N.Y. 2006).

However, irrespective of the wisdom or lack thereof, the tripartite requirements of this unusual provision became the law of the land as of October 17, 2005. This, however, does not mean that all cases are in agreement about what these three subsets of Section 109(h)(3)(A) mean, nor does it mean for the purposes of Fed. R. Bankr. P. 9011(b) that there was no good faith

basis for requesting an extension of existing law, or the establishment of new law based upon the plain language of the statute in this case, or existing case law in other jurisdictions given the lack of controlling precedent here.

It is a good faith argument for the recognition of existing law or the extension thereof that Section 109(h) of the Code is not a jurisdictional provision *ab initio*, and eligibility must often be determined after the filing of the case. This is not a case where the "bright line" of eligibility at the outset establishes whether the putative debtor may or may not seek relief under title 11. <u>See</u>, 11 U.S.C. § 109(g) (2005). <u>See also, In re Hollberg</u>, 208 B.R. 755 (Bankr. D.D.C. 1997 ("Automatic stay does not arise where an ineligible debtor barred by 11 U.S.C. § 109(g) files a case within the proscribed period"). Thus, Section 109(g) <u>is</u> a jurisdictional bar to both the filing of a new case and the invocation of the automatic stay, violations of which should merit Rule 11 sanctions as no argument in prospect exists for a good faith violation of its terms. The difference is that as to Section 109(h) of the statute, the so-called eligibility it creates must be determined after the fact by determining the adequacy of the steps taken by the putative debtor.

This distinction from Section 109(h) is particularly noteworthy as Congress only provided an exception to the automatic stay's protections where a debtor is ineligible due to Section 109(g) of the Code, and not Section 109(h) of the Code. <u>See</u>, 11 U.S.C. § 362(b)(21)(A) (2005). Obviously, Congress intended that the automatic stay arise irrespective of eligibility issues under Section 109(h), and so excluded any such provision from its amendments to Section 362(b).

Plainly, a case filed without statutory eligibility, as is the case with Section 109(g), may be an event subject to sanctions. To the contrary, when a case is filed under a waiver of credit

counseling, the eligibility is determined after the petition date on the facts and circumstances of each case.  See, In re Tujuana Hawkins, Case No. 06-00057 (Chapter 7 Bankr. D.D.C. 2007) ("Where a debtor makes a colorable claim to eligibility under Section 109(h) of the Code, the Court should determine circumstantially whether the debtor's factual setting establishes eligibility").  The filing of a case irrespective of eligibility under Section 109(h) gives rise to the automatic stay under 11 U.S.C. § 362(a).  In re Tracey A. Brown, Case 06-10534-DK (Chapter 13 Bankr. D. Md. 2006).  The Debtor in this case was simply unable to complete credit counseling prior to the scheduled foreclosure, and truthfully related this to the Bankruptcy Court in her petition.  The only violation of the certification that could have occurred might involve the Debtor's inability to recall each and every step she took in her good faith effort to complete her counseling; however, as must be noted this good faith effort has been broadly interpreted.

It is undoubtedly true that some courts have interpreted, as this Court impliedly did, to require that the Debtor demonstrate that she attempted to obtain credit counseling over a five day period prior to the Petition Date.  See, eg, In re Carey, 341 B.R. 798 (Bankr. M.D. Fla. 2006 (finding that the element of Section 109(h)(3)(A)(ii) requires five days of attempts to obtain credit counseling pre-petition).  However, the answer to what a debtor must do prior to the petition date in respect of attempts to obtain credit counseling is by no means well established under existing case law across the country.

Counsel made his argument, and was virtually unchallenged on the issue of "exigent circumstances" arising from a pending foreclosure alone, which was well briefed in the Debtor's consolidated response to the Motion for Sanctions and Motion for Examination.  See, eg; In re Romero, 349 B.R. 616 (Bankr. N.D. Cal. 2006) ("finding that advance creditor notice of garnishment

action constitutes exigent circumstances for the untimely debtor"); In re Giambrone, 2007 Bankr. LEXIS 1058 (Bankr. W.D.N.Y. - March 29, 2007) ("advance notice of foreclosure represents exigent circumstances"); In re Henderson, 2007 Bankr. LEXIS 1042 (Bankr. N.D. Tex. March 28, 2007 ("Imminent next day foreclosure on family homestead constituted basis for exigent circumstances"); See also, In re Hubbard, 333 B.R. 377 (Bankr. S.D. Tex 2005) ("Potential loss of home exigent circumstances"); In re Childs, 335 B.R. 623 (Bankr. D. Md. 2005) ("On limited facts, loss of home or eviction constitutes exigent circumstances").

However, as noted, the Court's expressed concern on the record was the concern that there had not been a five day period in which the Debtor made a request and was unable from the date of the request to obtain such counseling from a qualified agency. See, 11 U.S.C. § 109(h)(3)(A)(ii). Counsel relayed the Debtor's statements that she had attempted credit counseling over a two week period. The record in this case will show, as the Court will recall, that undersigned counsel was asked by the Court as to the existence of any decision which had contributed to the understanding of counsel that 11 U.S.C. § 109(h)(3)(A)(ii) could encompass post-petition periods, or otherwise did not require a full five day period to pass.

Unfortunately, counsel handed to the Court the case of In re Romero, *supra*, which did not speak to this issue. However, counsel should have presented the case of In re DiPinto, 336 B.R. 693 (Banrk. E.D. Pa. 2006) which articulated the argument and basic observation of counsel that was inartfully stated at the hearing: Although the *DiPinto* Court denied a request for credit counseling waiver on the existence of a pending imminent sheriff's sale, the Court stated succinctly what the plain language of the five day credit counseling requirement simply says:

The statute at § 109(h)(3)(A)(ii) requests the Debtor's certification to state that the

> credit counseling agency contacted by the Debtor informed him that counseling could not be furnished within the 5 day period beginning on the date on which the Debtor made the request. *Some think it is less than completely clear whether this provision requires the request to have been made 5 days prior to the date of the commencement of the case, or whether the 5 day period can straddle the date on which the bankruptcy case is commenced. A literal reading of the statute clearly does not require that the five days during which the debtor is unable get counseling after having requested it 5 days prior to the anticipated bankruptcy filing date.* Yet, if the prepetition counseling requirement is not interpreted that way it is easy to see how inconsistencies might follow. Consider, for example, the case of two individuals who intend to file bankruptcy because their homes are scheduled for Sheriff's Sale in fewer than five days.  Assume that one of the two contacts a credit counselor 4 days prior to the sale.  Assume that his individual is told that he cannot be counseled until five days later:  that is one day after the sale date, one day too soon to qualify for the counseling waiver-if the statute requires a 5 prepetition day request.

In re DiPinto, 336 B.R. at 699.

"There are no reported decisions holding that the five day period of §

109(h)(3)(A)(ii) must elapse prepetition; however, one court has noted in *dicta*, at least, that the

statute must be read that way. . . This Court is respectfully constrained to disagree*."* DiPinto, 136

B.R. at 701   "The Court suspects that the likely intention of Congress was to impose a five

prepeitition day counseling attempt. . . .Nevertheless, if a five prepetition day requirement was

what Congress intended, it simply did not put that requirement in the statute.  Where the statute is

unambiguous the Court must interpret it as it is written, not as it thinks it should have been

written." Id.

The relevance of this issue to the case before the Court for sanctions is important;

namely, that counsel did not place significant emphasis on the timing of the Debtor's efforts to

obtain credit counseling (or address the timing in any meaningful fashion in prior pleadings)

because the statute did not on its face present the proposition that the efforts relative to the waiver

occur fully (or even partially) prior to the Petition Date.  Counsel is being sanctioned for what a Court might "suspect" Congress intended, and with all due respect to this Court, and for that matter to the undersigned's esteemed colleague at the bar, this is not an appropriate use of a Rule 11 sanction.  As inelegant as undersigned counsel's argument might have been to the Court, the reason that no material importance was placed on the particular time frame wherein the Debtor requested and was unable to obtain credit counseling, was because the statute itself does not place material emphasis on such effort prior to the Petition Date.

"*The extent to which a litigant has researched the issues and found some support for his or her theories in minority opinions or law review articles or in consultation with other attorneys should be taken into account in determining whether Rule 9011(b)(2) has been violated. An argument that has been accepted by other courts is likely to be deemed nonfrivolous.*"  See, Collier on Bankruptcy, ¶¶ 9011-13, 9011.04[7][b] (15th Edition Revised 2005) (Emphasis supplied).  The *DiPinto* case is regarded as a minority view by at least one Court. See, In re Wilson, 346 B.R. 59, 62-63 (Bankr. N.D.N.Y 2006).  However agree with *DiPinto* or disagree with it, it stands as published precedent for the proposition that the five day request for credit counseling is not materially related to the date of the petition.  Consequently the filing of a petition wherein counsel understands that a debtor has made an effort or efforts to obtain credit counseling at some point in time is subject to a request for extension of applicable law.  In the case of In re Giambrone, 2007 Bankr. LEXIS 1058 p. 6 (Bankr. W.D.N.Y. 2007), the debtors attempting to obtain credit counseling for only one day prior to the petition date, and then continued thereafter.  The Giambrone Court granted a waiver despite the existence of no five days of credit counseling attempts prior to the petition date.  The Bankruptcy Court for the Northern District of Texas has

opined that two days of attempts to obtain credit counseling without success in the face of a scheduled foreclosure gave rise to a good faith basis to except the filing from prepetition credit counseling under 11 U.S.C. § 109(h)(3)(A)(i)-(iii).  See, In re Henderson, 2007 Bankr. LEXIS 1042 (Bankr. N.D. Tex. 2007).

Put more simply, two days cannot be five, and if not two why not one or none prepetition?  For that matter, there is no delineation on how early in advance of the petition the credit counseling could have been requested without success over five days.  For counsel to be sanctioned where the Debtor advised over some two week period before she filed she made some efforts to obtain credit counseling, including internet efforts, imposes a standard which the statute and the case law do not clearly set forth.

The question of whether the credit counseling agency must be a compliant agency or a non-compliant agency, too, is the subject of varied opinions.  In the case of In re Meza, 2007 U.S. Dist. LEXIS 48430 (E.D. Cal. 2007), p.4 of 5, a debtor who visited a consumer debt consolidation service known as Debt Free Credit Counseling Service (a non-accredited agency) well in excess of 180 days prior to her petition date was found to have been in compliance with her credit counseling obligations under Section 109(h) because of her "substantial compliance" with the requirements of 11 U.S.C. Section 109(h), permitting the underlying bankruptcy court to forego analysis of any waiver request.  In short, visiting some private company and attempting some measure of debt counseling was found to meet the call of a debtor's obligations.  The Debtor's attempts to seek counseling with her church and by seeking an internet session should yield no lesser result.

In the case of In re Hess, 347 B.R. 489 (Bankr. D. Vt. 2006), the Bankruptcy Court

undertook a review of two cases.  In the first, the Debtor also consulted with a non-approved credit

counseling agency prepetition, and after post-petition counseling, the Court found that the Debtor

had met the "good faith requirements" of Section 109(h).  In the second case, the Debtor was

simply filed without credit counseling at all or any measurable attempts because of an illness of the

debtor's attorney.  In both cases, the Court found that the elements of Section 109(h) should be

read on the conjunctive standards applied to 11 U.S.C. § 707(a), including whether the Debtors

took "reasonable steps" towards compliance, and prejudice against any third party, as well as

equitable factors.

        Further, Bankruptcy Courts across the United States have arrived at widely varied

results when considering whether good faith cause existed to find compliance with the waiver

requirements of 11 U.S.C. § 109(h)(3)(A)(i)-(iii).  See, In re Manalad, 360 B.R. 288 (Bankr. C.D.

Cal. 2007) ("Where debtor did not perform credit counseling and did not seek a waiver because

debtor thought in error the requirements only applied to consumer debts, dismissal of the case not

mandatory because Section 109(h) not jurisdictional"). See also, In re Kernan, 358 B.R. 537

(Bankr. D. Ct. 2007) (Debtor who failed to obtain credit counseling until one day after her petition

was permitted to remain in bankruptcy due to her post-humous description of efforts to obtain

credit counseling); In re Nichols, 362 B.R. 88 (Bankr. S.D.N.Y. 2007) (totality of the

circumstances test coupled with an evaluation of manifest injustice should control determinations

of compliance with Section 109(h)(3)); and In re Davey, 2006 Bankr. LEXIS 1798 (Bankr. D. Vt.

2006) (Where debtor took wrong course prepetition, and then undertook correct credit counseling

post-petition, the Court found debtor made a good faith effort towards complying with Section

109(h)(3)).

Counsel believes that the effort to investigate the Debtor's attempts to obtain credit counseling within only a few hours of her foreclosure, dealing with an elderly woman who was under medical care, and who is unable to clearly understand all aspects of the legal framework that she was required to meet, was an adequate effort.  Under the standards articulated by the above case law, a debtor who undertakes efforts at credit counseling, even at a non-approved agency, for some period of time which this debtor said (and counsel relayed at the hearing) was over some odd two weeks meets the standard of 11 U.S.C. § 109(h)(3)(i)-(iii).  Further, the Debtor's decision to agree to pursue a refinancing after the filing of the petition which was in her best interests, and counsel's acquiescence in the Trustee's motion to dismiss was in the highest order of counsel's duty to the bar and clients in following what was in the client's best interests.

Such acquiescence had nothing to do with eligibility issues, but rather was a sensible and pragmatic choice as to the best option available, a reverse mortgage without payments that would ensure her a home for life, first evaluated after the Petition Date.  It is unfortunate that the Debtor became even more frightened at her circumstances after the filing of the Motion for Sanctions such that she abandoned her communications with counsel and participation in this case, however, counsel cannot control the Debtor's continued interest or lack of interest in the case.  The sole issue relative to sanctions was whether there was, under the case law existent and the statute at hand, a good faith effort to comply with Section 109(h)(3)(i)-(iii) and counsel believes the facts which were obtained met the standard.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the District Court should reverse and overturn the

Interim Order and Interim Memorandum of Decision, and the Final Order and Final Memorandum of

Decision as to the imposition of any Rule 11 sanction, without regard to the monetary stipulation

reached by and between Appellant and Appellee which is not an element of this appeal, and the

District Court should grant such other and further relief as equity and justice may require.

Respectfully submitted
RESPECTFULLY SUBMITTED,

----------/s/ John D. Burns

John D. Burns, Esquire, Fed. Bar No. 22777
The Burns LawFirm, LLC
6303 Ivy Lane, Suite 102
Greenbelt, Maryland 20770

Counsel to Appellant

Dated: April 11, 2008, revised brief.